WAHL vs. HOLT and another.

COMMON CARRIERS: *Bill of lading construed.—Through contract.*

1. By the terms of a bill of lading, goods shipped at Milwaukee by the "Commercial Line of Propellers" were to be delivered "as addressed on the margin, or to his or their consignees, upon paying freight and charges as noted below." The margin contained the words "G. F. W., Providence, R. I. Care A. T. Co., Buffalo. * * Rate to Providence per 100 lbs., 45 cents; to be landed on India Wharf." (Signed by the agent of the "Commercial Line.") *Held*, that this was a contract to carry the goods *through* to Providence, there being nothing in the instrument limiting the first carrier's liability to its own route. *Peet v. Ch. & N. W. Railway Co.* (19 Wis. 118) followed.

2. A stipulation in the bill of lading, that in case of loss or damage of any of the goods named therein, for which any carrier under the same might be liable, such carrier should have the benefit of any insurance by or on account of the owner—*held* to confirm the view that this was a *through* contract.

3. The bill states that the goods were shipped "by the Commercial Line of Propellers, from Milwaukee to Buffalo." *Held*, that in view of its other stipulations, this must be taken to mean merely that the propellers ran from Milwaukee to Buffalo, and not that said first carrier undertook to transport the goods only as far as Buffalo.

APPEAL from the Circuit Court for *Milwaukee* County.

Action against *Holt* and *Ensign*, as common carriers and proprietors of the Commercial Line of Propellers, for damages resulting to plaintiff from the sinking in the Erie canal of certain bones in sacks, which the plaintiff had contracted to sell to the consignee in Providence, R. I. The defense was, that the loss happened beyond Buffalo, the end of defendants' route, and that defendants had fully performed their contract.

The character of the shipping receipt put in evidence by the plaintiff will appear from the opinion, *infra*. Defendants offered in evidence various depositions for the purpose of proving: 1. That there was no community of interest whatever in the business between the Commercial Line and the "A. T. Co." (American Transportation Company), at Buffalo, or any line between Buffalo and Providence. 2. That there was no joint or partnership interest in the freights. 3. That the fixing of the rate of freight by the agent of the defendants in Milwaukee, was merely for the convenience of business. 4. That there was no such firm or corporation carrying goods eastward, as the "American Transportation Company," or "A. T. Co.;" that their business was the transportation of goods westward; and that the goods in question went into the hands of a firm of common carriers between Buffalo and New York, named "H. Niles & Co., Forwarders." 5. That the plaintiff's goods were received at Buffalo, in good order, within a reasonable time after their shipment, and were forwarded in the usual manner on board of a canal boat, as directed in the bill of lading. The court

said that it would consider these matters as proven, but held that they did not relieve the defendants from liability in this case.

The court found as facts, that defendants executed and delivered to the plaintiff the shipping receipt above referred to, for the goods in question; that defendants did not transport the goods with reasonable dispatch and diligence, and, in like good order as when received, deliver them to the consignee at Providence, R. I.; but that through defendants' negligence the goods were detained and injured to plaintiff's damage $1,526.58. Judgment was accordingly rendered in plaintiff's favor for the sum last mentioned; and the defendants appealed.

*Emmons & Van Dyke*, for appellants, argued, from the terms of the bill of lading, that there was no *express* contract to carry beyond Buffalo (citing *Schneider v. Evans*, 25 Wis. 241); that the defendants were, therefore, not liable, since no usage of business had been shown to create an *implied* contract (*Peet v. Ch. & N. W. R. W. Co.*, 19 *Wis.* 118); and that in the absence of an entirely clear and certain express contract, the facts which the defendants offered to prove in reference to the usage of business, etc., should have been considered in determining the real nature of their undertaking. *Peet v. Railway Co.*, 20 Wis. 594; *Sigerson v. Cushing*, 14 id. 327; *Angle & Co. v. R. R. Co.*, 9 Iowa, 487; *Darling v. R. R. Co.*, 11 Allen, 295; *Van Santvoord v. St. John*, 6 Hill, 158; *Jenneson v. R. R. Co.*, 4 Am. Law Reg. 234, and cases cited; *R. R. Co. v. Schwarzenberger*, 9 Wright, 208; *Ill. Cent. R. R. v. Copeland*, 24 Ill. 338; *Same v. Johnson*, 34 id. 389; *B. & P. Steamboat Co. v. Brown*, 54 Pa. St. 77.

*Peter Yates* (with *E. Mariner*, of counsel) for respondent.

Cole, J.    Upon the face itself of the bill of lading or shipping receipt, we feel bound to hold that the pro-

prietors of the Commercial Line contracted to carry the goods to Providence, R. I. This, it seems to us, is the natural construction of the various clauses of that instrument.

In the first place, it is stipulated in the contract that the goods shall be delivered in good order and condition as when received, " *as addressed on the margin*, or to his or their consignees,  *  *  upon paying freight and charges as noted below."

In the margin was the following:

| | |
|---|---|
| " Account C. Wahl, | 1544 sacks bones, 159,850. |
| Geo. F. Wilson, | Rate to Providence per 100 lbs., |
| | 45 cents, to be landed on |
| Providence, R. I. | India Wharf, |
| Care A. T. Co., | For |
| | Commercial Line, |
| Buffalo. | CHAS. W. ROGERS, Agent." |

These clauses show that it was a through contract. For the goods were to be delivered " as addressed on the margin," which was at a particular wharf at Providence; the freight for the entire route having been agreed upon. The undertaking of the defendants upon these clauses alone would seem to be clear. It was to deliver the goods at their destination at Providence to the consignee, landing them upon " India Wharf." It is clearly within the principle of *Peet vs. the Chicago & Northwestern R. R. Co.*, 19 Wis. 118. But there is another clause in the bill of lading which strongly confirms this view, and shows that it was the understanding of the parties that the Commercial Line was bound to carry the goods to Providence, and there deliver them to the consignee designated in the margin; and that is the stipulation by which it was agreed that in case of loss or damage of any of the goods named in the bill of lading, for which any carrier under the same might be liable, such carrier should have the benefit of any insurance by or for account of the owner.

Wahl vs. Holt and another.

Now, as remarked by the counsel for the respondent, it is a little singular, if the Commercial Line only contracted to carry the goods to Buffalo, the terminus of its line, and there deliver them to the next succeeding carrier, that it should have used the words " any carrier " when stipulating that it should have the benefit of any insurance made on account of the owner in case of loss; or if this was not the meaning of that condition, that it should contract that all subsequent carriers should have the benefit of that stipulation after its own duty in respect to the goods had been fully performed. There is nothing in the bill of lading limiting the liability of the Commercial Line to its own route; and, upon-the clauses above referred to, it is clear to our minds that it expressly contracted to carry the goods to Providence, and deliver them to the consignee by landing them upon the particular wharf named.

It is claimed that the words in the margin, " Care A. T. Co., Buffalo," and the language " from Milwaukee for Buffalo," used in the bill of lading, define the beginning and end of the carriage by the Commercial Line. The obvious meaning of the latter words is, that the line of propellers by which the goods were shipped ran " from Milwaukee for Buffalo; " and they were not intended to define the points between which the Commercial Line had undertaken to transport the goods. The other words in the margin can have no such controlling effect given to them as contended for by the counsel for the defendants. Upon the whole address in the margin, the contract of the Commercial Line appears to be, to deliver the goods at Providence. And as this was the express agreement of that line, it follows, of course, that it is liable for the loss which occurred while the goods were in transit.

This disposes of all questions in the case necessary to be considered.

*By the Court.*—The judgment of the circuit court is affirmed.