BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1909.

F. H. SMITH COMPANY, Appellant, v. LOUISVILLE & NASHVILLE RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals. Argued and submitted October 8, 1909. Opinion Filed November 2, 1909.

1. SALES: Stoppage in Transitu: Insolvency of Buyer Necessary. Insolvency of the buyer is an essential element to the exercise of the right of stoppage *in transitu*.

2. ——: ——: Evidence: Refusal to Pay Draft Not Evidence of Insolvency. The refusal of a buyer to honor drafts drawn by the seller for the price is not in itself evidence of the insolvency of the buyer essential to justify the exercise of the right of stoppage *in transitu*.

3. INSTRUCTIONS: Refusal: Contrary to Facts. It is within the province of the trial court to refuse instructions contrary to what, in determining issues of fact, he found to be the facts.

4. SALES: Evidence: Bills of Lading: Presumptive Evidence of Ownership. The delivery of a bill of lading is strong presumptive evidence that title has passed to the party named therein, or his assignee, yet this presumption may be overthrown by evidence, and is to be determined by the facts peculiar to the transaction itself.

Smith Co. v. Railroad.

5. ——: ——: Delivery. Where property was turned over to a common carrier for transportation to the buyer, and a bill of lading that prima facie carried title was sent to the latter, there was a delivery of such property to the consignee.

6. COMMON CARRIERS: Bills of Lading: Liability for Diverting Shipment. A carrier, who has issued a bill of lading in favor of the buyer of goods, acts at its peril when, as carrier or as warehouseman, it diverts the goods, and it must ascertain the facts, and its justification in diverting the goods turns, not on its knowledge or want of knowledge of facts, but on the facts themselves.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*Thos. F. Galt* for appellant.

(1) The court erred in refusing instructions offered by the plaintiff. Hutchinson on Carriers, vol. 1, page 210, paragraph 193; page 211, paragraph 194; Mechem on Sales, sec. 740, p. 664; Mechem on Sales, sec. 788, p. 664; Mechem on Sales, sec. 789, p. 664; Wigton v. Bowley, 130 Mass. 252; Tiedeman on Sales, secs. 85, 332, p. 532, second par.; Benjamin on Sales (7 Ed.), sec. 764, p. 791; sec. 804, par. 789. (2) The court erred in giving the following instruction: "The court instructs and declares the law to be that under the pleadings and the evidence, plaintiff is not entitled to recover from the defendant, Louisville & Nashville Railroad Co." Tiedeman on Sales, sec. 80. (3) The court erred in its finding of facts and law, in the following particular: "Instruction No. 2 is refused, because, as I have stated, the mere possession of the bills of lading is not conclusive evidence of ownership; neither do I regard it as material, as stated in the instruction, that the plaintiff at one time refused to pay for the lumber. It makes a great deal of difference, in my opinion, as to whether the lumber was paid for or not, under the

contract which the plaintiff company had with Creelman, and if the lumber, as a matter of fact, was paid for after May 28th or 29th, certainly the duty rested upon the plaintiff to advise the railroad company as to its rights." Tiedeman on Sales, sec. 332, p. 537; Benjamin on Sales, (7 Ed.), p. 791, sec. 764; par. 797, 799; sec. 804, par. 789. The court erred in its finding of facts and law, as follows, to-wit: "Under the contract between Creelman and the F. H. Smith Co., the terms of purchase were to be three and five days sight draft, and when the plaintiff company refused to accept drafts drawn under and in pursuance of the contract, it in effect refused to accept the lumber represented by such drafts, and was not legally or morally entitled to accept such lumber. The lumber was the property of the lumber company." Benjamin on Sales, sec. 804. (5) Plaintiff had title to the lumber, because the plaintiff was the consignee named in the bill of lading, and the bill of lading was sent direct to the plaintiff. (6) The shipper took out bills of lading in favor of the plaintiff, and sent bills of lading direct to the plaintiff. The defendant became the agent of the plaintiff, and the delivery to the railroad company was equivalent to a delivery to the plaintiff. (7) The plaintiff was the owner of the lumber contained in the cars because the plaintiff was the consignee named in the bills of lading, and it held the bills of lading and the plaintiff paid for the lumber in these cars. (8) When the goods have reached the actual possession of the buyer the vendor's sole remedy is by personal action, and he has no rights in the goods.

*Bryan & Christie* and *Harold R. Small* for respondent.

(1) The intention of the consignor and plaintiff-consignee was that the title to and the right to receive the lumber was conditioned upon plaintiff's acceptance of the drafts. Plaintiff did not have the right

to receive the poplar, because it refused to accept the drafts therefor. The intention controls. Express Co. v. Dixon, 94 U. S. 549; Frazier v. Railroad, 104 Mo. App. 355; Mechem on Sales, sec. 788; Bank v. Bangs, 102 Mass. 291; Mechem on Sales, sec. 740; Shepard v. Harrison, 23 Eng. Ruling Cases, p. 349; Daniel on Neg. Ins., sec. 1734 et seq.; Greenwood & Co. v. Canadian, etc., Co., 110 A. S. R. 627; Johnson-Brinkman Co. v. Bank, 116 Mo. 570; Strother v. Lumber Co., 200 Mo. 647; Howard v. Haas, 131 Mo. App. 499; Bailey v. Dennis, 135 Mo. App. 93. (2) Plaintiff's theory at the trial was that the poplar in question was not up to the grade contracted for, and for that reason plaintiff cannot now say that the delivery of the poplar by the consignor to the initial carrier consigned to plaintiff amounted to an appropriation by the consignor to the agreement for the sale of poplar of another grade. Mechem on Sales, sec. 746. (3) The consignor had the right of stoppage in transitu on May 28th, while the cars were in transit and when plaintiff had not only not accepted the drafts for the cars, but by telegram and many letters had advised the consignor of its inability to accept the the drafts, and the consignor lawfully exercised its right to stop in transit on May 28th. If plaintiff was able to accept the drafts, it is estopped now to say that the stoppage in transitu by the consignor, which it not only directed but also justified by its statement of its inability to accept, was wrongful. Hutchinson on Carriers (3 Ed.), sec. 761; Mechem on Sales, secs. 1539, 1540; Hutchinson on Carriers, sec. 328. (4) Whether plaintiff, under the arrangement with the consignor, was entitled to receive the poplar from defendant on its arrival in East St. Louis, is a matter of no consequence in this case, because plaintiff not only refused to accept the drafts for the three cars of poplar when presented on May 24th, 25th and 28th, but also, by letter to the consignor, on May 26th, and by telegram to the consignor on May 28th, while the lumber was in

transit, and by telegram to the consignor on May 29th, the day the lumber arrived in East St. Louis, notified the consignor that plaintiff could not accept any more drafts or any more poplar, and ordered the consignor to stop, and by way of special emphasis said, "This is imperative." Such conduct repudiated whatever arrangement existed between the consignor and the plaintiff, and justified defendant, on May 29th, on notice from the consignor received by defendant May 28th, while the lumber was in transit, to hold the cars in question, on arrival in East St. Louis on May 29th and thereafter, far the consignor. Lester v. Railroad, (N. Y.) 92 Hun 342; Moore on Carriers, p. 215; Express Co. v. Dixon, 94 U. S. 549; Stafsky v. Railroad, 143 Ala. 272; Bigelow v. Chapman, 43 Ill. App. 561; Hutchinson on Carriers, sec. 678; Schwarzschild, etc., v. Railroad, 76 Mo. App. 623. (5) No transfer was made by the consignor to plaintiff on May 31, 1906, of the lumber in question. If a transfer was made, then defendant, as the lawful bailee of the consignor, was entitled to notice of such transfer before defendant could be charged by plaintiff with conversion. No notice was given. Hutchinson on Carriers, sec. 681.

STATEMENT.—Action by plaintiff, appellant here, against the respondent, to recover the value of three carloads of poplar lumber, plaintiff averring in the first count of its amended petition, that the Nashville, Chattanooga & St. Louis Railroad Company, on the 23d of May, 1906, received from the Kennesaw Hardwood Lumber Company, at Atlanta, Ga., consigned to plaintiff, a carload of poplar lumber for transportation and delivery to plaintiff at East St. Louis, Ill., and issued its bill of lading for the same, the lumber being contained in a car marked "Wabash, No. 66923;" that the bill of lading shows on its face that the Nashville, Chattanooga & St. Louis Railroad Company was to deliver the car to the defendant, Louisville and Nashville

Railroad Company, and that defendant was to deliver the car of lumber to plaintiff at East St. Louis; that defendant received and accepted the car for transportation to plaintiff at East St. Louis, but that it has failed and neglected to deliver it to plaintiff; that the plaintiff has made demand on defendant for the lumber contained in the car and defendant refused to deliver said carload of lumber to plaintiff. The petition further avers that plaintiff "has purchased said bill of lading and the lumber contained in said car and that he is the lawful and rightful owner of said lumber and said bill of lading." Averring that the lumber is of the reasonable value of $417.76, plaintiff demands judgment for that amount, with interest.

The second and third counts are similar to the first, with the exception that the lumber claimed in the second count was in a car marked "Penna., No. 76169," and valued at $441; and in the third count the car is marked "Nashville, Chattanooga & St. Louis, 6552," and the lumber valued at $423.05.

The action seems to have been dismissed as to the Nashville, Chattanooga & St. Louis Railroad Company and thereafter prosecuted against the Louisville & Nashville Railroad Company alone. The latter company answered by a general denial and by the specific averment, that plaintiff did not at any time own or have any interest in or have the right of possession of the lumber described in the several counts of the petition. The case was tried before the court, a jury having been waived, and while a great deal of testimony was introduced, the case appears to have been ultimately submitted on an agreed statement of facts. A comparison of that with the testimony shows that this stipulation covers practically all the essential facts. It is only necessary to add to it, that in addition to the facts there agreed upon, it is not disputed that before sending the telegram referred to in the stipulation as of date May 29th, plaintiff, on May 28th, had sent to

the Kennesaw Hardwood Lumber Company, at Atlanta, Ga., a telegram as follows: "Cannot accept drafts drawn; stop shipping poplar; grade not right." This stipulation is as follows:

"A number of cars were shipped by Kennesaw Hardwood Lumber Company, and drafts were, on presentation by St. Louis bank, either paid or accepted by F. H. Smith Company, and bills of lading covering such cars were received by F. H. Smith Company and the cars delivered to the F. H. Smith Company by the railroad on surrender bills of lading.

### THREE CARS IN QUESTION.

"Wabash 66923. Lumber by Kennesaw Hardwood Lumber Company was delivered in this car at Atlanta, Georgia, May 23, 1906, consigned by said lumber company to said F. H. Smith Company, East St. Louis, Illinois; bill of lading was issued on that date accordingly. Drafts for $141.36, dated Atlanta, Georgia, May 22, 1906, payable on June 7, 1906, to order of Kennesaw Hardwood Lumber Company, stating on its face 'one-half car from Atlanta, Georgia, W. R. R. 66923,' drawn on F. H. Smith Company, Commercial Building, St. Louis, Missouri, drawn by Kennesaw Hardwood Lumber Company, of Atlanta, Georgia; and another draft for $141.37, dated May 22, 1906, payable June 6, 1907, to order of Kennesaw Hardwood Lumber Company, for one-half car from Atlanta, Georgia, W. R. R. 66923, drawn on F. H. Smith Company by Kennesaw Hardwood Lumber Company, were transmitted for collection at Atlanta, May 22, 1906, and were received and presented May 24th and 25th, respectively by the National Bank of Commerce to F. H. Smith Company for acceptance, and acceptance and payment by F. H. Smith Company were refused and drafts were at once returned to shippers at Atlanta. On May 24th F. H. Smith Company, which had on that day received bill of lading for this

car, turned same over to defendant, requesting re-consignment from East St. Louis, Illinois, to St. Louis Car Company, St. Louis, Missouri. On May 28th the Kennesaw Hardwood Lumber Company instructed the N. C. & St. L. Ry. Co., the initial carrier, and the defendant, the next connecting and final carrier, to hold shipment subject to the order of the shipper, telling them that the shipment was the property of the shipper. The Louisville & Nashville Railroad Company held the car pursuant to this instruction until June 6th, when it was ordered diverted and was diverted by defendant on the order of the shipper to Steger, Illinois. On May 29th, F. H. Smith Company telegraphed Kennesaw Hardwood Lumber Company at Atlanta, Georgia, as follows: 'Will accept no more drafts or any more poplar. Stop. This imperative.' On May 29th the car arrived at destination in East St. Louis, Illinois, where the car was held by the L. & N. Railroad, as above stated, subject to instructions from shipper. On May 31st Mr. Creelman, of Kennesaw Hardwood Lumber Company, met Mr. Smith of the F. H. Smith Company at St. Louis, and a settlement of some sort was reached. in regard to cars that had been shipped, and, as the F. H. Smith Company contends, in regard to car Wabash 66923, the Kennesaw Hardwood Lumber Company, however, says that no settlement was made on that day, or at any time, for this car. On June 6th the car was diverted by defendant to Steger, Illinois, as above stated. The drafts for this car were never paid or taken up by F. H. Smith Company.

"Pennsylvania 76169. Shipped by Kennesaw Company to Smith Company from Atlanta to East St. Louis May 22, 1906, by way of N. C. & St. L. and L. & N. Railroads, consigned straight to F. H. Smith Company; bill of lading issued; draft for $298.58, dated May 21, 1906, payable June 5, 1906, on account car Pennsylvania 76169, was presented by National Bank of Commerce

145 App—26

in St. Louis to F. H. Smith Company on May. 24th, and acceptance or payment thereof refused. On May 24th F. H. Smith Company, having bill of lading for this car, enclosed same to L. & N. agent here, instructing diversion from East St. Louis, Illinois, to St. Louis Car Company, St. Louis. May 28th shipper instructed N. C. & St. L. and L. & N. to hold this car subject to instruction from shipper. Car ordered by L. &. N. so held. May 29th car arrived at destination at East St. Louis, Illinois. On May. 29th, F. H. Smith Company telegraphed Kennesaw Hardwood Lumber Company at Atlanta, Georgia, as follows:

" 'Will accept no more drafts or any more poplar. Stop. This is imperative.'·

"On May 31st Mr. Creelman met Mr. Smith, as above stated, and some sort of a settlement was reached; according to plaintiff, it covered this car; according to Kennesaw Hardwood Lumber Company, it did not cover this car. On June 6th this car, which had been held since May 29th, as instructed, subject to order from shipper, was, on the order of shipper, diverted from East St. Louis to Steger, Illinois, by the defendant.

"N. C. & St. L. 6552. Shipped from Atlanta, Georgia, to East St. Louis, Illinois, May 23, 1906, by Kennesaw Hardwood Lumber Company, to F. H. Smith Company, by way of N. C. & St. L. and L. & N. Railroads; bill of lading issued, consigning shipment to F. H. Smith Company. On May 25th draft for $289.31, payable June 9, 1906, to the order of the Kennesaw Hardwood Lumber Company 'in full car from Atlanta, Georgia, N. C. & St. L. 6552' was drawn on. F. H. Smith Company by Kennesaw Hardwood Lumber Company, and was presented on May 28, 1906, by National Bank of Commerce in St. Louis to F. H. Smith Company. F. H. Smith Company refused to accept or pay draft, and the draft was at once returned by the bank to shipper.

On the same day, May 28th, F. H. Smith Company advised L. & N. Railroad that it held bill of lading for this car, but did not surrender bill of lading with its advice, which was by letter, and asked diversion of shipment from East St. Louis, Illinois, to St. Louis Car Company, St. Louis, Missouri. On the same day, May 28th, shipper instructed N. C. & St. L. and L. & N. not to deliver car to F. H. Smith Company unless instructed so to do by shipper. May 29th car arrived at destination, East St. Louis. May 29th, F. H. Smith Company wired Kennesaw Hardwood Lumber Company at Atlanta, Georgia, as follows: 'Will accept no more drafts or any more poplar. Stop. This is imperative.'

"May 31st the Creelman-Smith settlement above referred to took place at St. Louis. On June 6th, the L. & N. Railroad, having held the car subject to shipper's instructions, received instructions from shipper to divert from East St. Louis to Steger, Illinois, which it did on that date."

At the close of the testimony, plaintiff prayed the court for the following declarations of law:

"1. The court declares the law to be that if the plaintiff, who was the consignee named in the bills of lading, had the bills of lading in his possession, and had advanced money to the shipper on account of the lumber contained in these cars, then the defendant had no right to divert these cars from plaintiff, and the judgment must be for the plaintiff.

"2. The court declares the law to be that if the plaintiff, who was the consignee named in the bills of lading, had the bills of lading in his possession, and had paid the shipper for the lumber contained in the cars covered by the bills of lading, no matter whether the plaintiff at one time refused to pay for the said lumber or not, if, as a matter of fact, the said lumber was paid for, then the defendant had no right to divert these cars from the plaintiff, and the judgment must be for plaintiff."

The court refused to give them, plaintiff excepting. Thereupon the court gave an instruction to the effect, that plaintiff was not entitled to recover from the defendant, the Louisville & Nashville Railroad Company. Exception was duly saved to the giving of this instruction, and, the court finding for defendant, entered judgment accordingly. Plaintiff having filed its motion for new trial and that being overruled and exception duly saved, has duly prosecuted its appeal to this court.

REYNOLDS, P. J. (after stating the facts).— At the outset of the case it might be as well to observe that the very essential element involved in the right of stoppage in transit, that is to say, insolvency of the buyer, is not present in this case. The right of stoppage in transit (to quote from a very concise elementary work, Brown, American Law of Sales, p. 185), "exists where the parties live at a distance from each other, the goods are in course of transportation for delivery, have not been paid for, and the buyer is insolvent. In such circumstances the seller may retake the goods at any time before they come to the possession of the buyer. The right, like that of lien, presupposes the vesting of title, but it may be exercised before the expiration of the term of credit or the maturity of the buyer's note." There is no evidence in this case tending to show insolvency of the buyer, plaintiff here. All that appears is that it refused to honor the drafts, not in itself evidence of insolvency. The case, therefore, turns upon the question as to whether or not there was a consummated sale and delivery of the lumber by the Kennesaw Hardwood Lumber Company to plaintiff, and whether that sale was subsequently set aside and repudiated by the parties to it and, conceding that to have been done, whether a settlement and agreement was made between the parties at the interview which took place between them on the 31st of May, or before the 6th of June, by

which title to the lumber in controversy again passed to the plaintiff.

It is argued by counsel for the appellant, that as by virtue of the bills of lading, executed by the carrier, plaintiff had acquired title to the lumber, and the defendant became the agent of the plaintiff to deliver the lumber to it, delivery by the consignor to the carrier was equivalent to delivery to the plaintiff. Plaintiff endeavored to cover this position by the instructions asked but which the trial court refused to give. In the written opinion filed by the learned trial judge, which is in the record before us, he states as a reason for his refusal to give the first instruction, that it "is inapplicable to the facts in the case, as there is no proof before me that the plaintiff had advanced any money to the shipper on account of the lumber contained in the cars in controversy. The proof is directly to the contrary, that every draft drawn on account of the shipments in controversy was refused and returned to the drawer, and that was the state of affairs when the shippper notified the railroad company in effect that it, the lumber company, was the owner of the property in question. If any money was advanced on account of these cars, it was advanced after May 29th." As the question of whether plaintiff "had advanced money to the shipper on account of the lumber contained in these cars," was a question of fact, it was within the province of the trial court to determine it, and it was within his province to refuse to declare, as this instruction did, contrary to what he found to be a fact. Hence this declaration was properly refused. Passing on to the second declaration of law asked by plaintiff, the trial judge states that he refused that "because, as I have stated, the mere possession of the bills of lading is not conclusive evidence of ownership. Neither do I regard it as immaterial, as stated in the instruction, that plaintiff at one time refused to pay for the lumber. It makes a great deal of difference in my opinion as to whether the lumber was paid for or

not under the contract which the plaintiff company had with Creelman, and if the lumber as a matter of fact was paid for after May 28th or 29th, certainly the duty rested upon the plaintiff to advise the railroad company as to its rights." It will be seen that the learned trial judge, in passing on each of these instructions, holds that possession of bills of lading is not conclusive evidence of passing of title or vesting of title in the holder. This position is earnestly controverted by counsel for appellant, and he cites many authorities which he claims are in support of his contention. Those cited are Hutchinson on Carriers, vol. 1, pp. 210, 211, par. 193, 194; Benjamin on Sales, (7 Ed.), sec. 804, par. 789; Mechem on Sales, secs. 740, 788, 789; Tiedeman on Sales, last par., sec. 85, p. 121; second par. sec. 332, p. 537, as well as the case of Wigton v. Bowley, 130 Mass. 252. In fact these citations are the ones relied on by the counsel for all his contentions. An examination of the authorities cited and even of the quotations from them by counsel fails to to sustain his contention. All of the authorities cited and, so far as we know, all authorities, agree that while the delivery of the bills of lading is strong presumptive evidence that title has passed to the party named therein or his assignee, yet this is a presumption which may be overthrown by evidence and is to be determined by the facts peculiar to the transaction itself. Thus in Southern Express Co. v. Dixon, 94 U. S. 549, the Supreme Court of the United States holds that the consignment by bill of lading is prima-facie evidence only of the investiture of ownership of the goods in transit in the consignee. Our court in Frazier v. Atchison, Topeka & Santa Fe Ry. Co., 104 Mo. App. 355, has distinctly held that the issuance of a bill of lading in the name of the consignee would not have conclusively conveyed to him title or right of possession to the goods shipped; "for a bill of lading is but prima-facie evidence of the intent of the vendor to

part with the title or interest in the property for which it was issued, and extraneous evidence is admissible for the purpose of showing the true intent of the parties." Scharff v. Meyer, 133 Mo. 428, is cited in support of this proposition. So also in Strauss, Pritz & Co. v. Hirsch & Co., 63 Mo. App. 95, the Kansas City Court of Appeals held that the vesting of title to goods may depend upon the purchaser's performance of some condition, in which case possession before the performance thereof does not pass title.

In Strother v. McMullen Lumber Co., 200 Mo. 647, our Supreme Court held that the general rule laid down in the books is, that the passing of title is one of intention, and that such intention must be deduced from the contract, construed in the light of the circumstances under which it was made, including the nature and character of the business and the subject-matter to which the contract relates. The discussion of the authorities in this Strother- case by Judge GANTT, who delivered the opinion, is so full that it is not necessary to refer to any other in the support of the position taken by the trial judge on it as to the first declaration asked and repeated in his objections to the second declaration asked.

When we come to consider the second instruction, however, as a whole, and which the court refused to give, we are compelled to hold this refusal error. Under the facts in the case the lumber was most certainly delivered to plaintiff by turning it over to the railroad company, the initial carrier, consigned to plaintiff and sending the latter the bill of lading and prima facie that carried title. But it appears by the evidence that plaintiff had notified the Kennesaw Hardwood Lumber Company the day before not to ship any more lumber pending the adjustment of certain differences between these parties. There is a question that suggests itself to us from the evidence, whether this direction applied to this particular shipment or was to apply to others subsequently to be made. Passing that, however, as not

settled by any finding, and as rather ambiguous, the most that can be said in favor of the Kennesaw Hardwood Lumber Company is, that the title to the lumber was not to vest in plaintiff until it had accepted the drafts drawn on it, payable June 6th, but to be accepted at sight. Possibly the evidence in the case would justify the conclusion that title was not to vest in the plaintiff company until it had paid, or certainly until it had accepted, the drafts. The inference may be drawn from the evidence in the case that the sale was on credit, with the understanding that the drafts due from five to ten days ahead should be accepted at sight. Assuming, however, that the trier of the fact might find that it was a condition precedent that the draft should be accepted on presentation and might further find that plaintiff's notification to the Kennesaw Hardwood Lumber Company, not to ship any more lumber and that it would not accept drafts, applied to these particular shipments and amounted to a repudiation of the sale, so that the title did not vest in plaintiff and left the title in such shape that the Kennesaw Hardwood Lumber Company, as consignor, might order the railroad company to divert shipment to some other consignee, there is certainly evidence for plaintiff tending to prove that on May 31st the lumber in dispute was included in the settlement made, and that plaintiff then paid for it. If this is true, as plaintiff still held the bills of lading or, more correctly, still held one and had turned over two of them to the railroad company defendant, with orders to ship the lumber to a consignee designated by plaintiff, certainly title to the lumber then vested in plaintiff on May 31st. In the second declaration of law asked by the plaintiff, the court ignores this proposition, in refusing to declare that if plaintiff had paid the shipper for the lumber contained in the cars covered in the bills of lading, then the lumber became the property of the plaintiff and defendant had no right to divert it by shipping it to the order of the Kennesaw Hardwood

Lumber Company. We cannot agree with the finding of the learned trial judge that plaintiff or any one else was bound to notify defendant of this new deal, and that failure to do so justified the defendant in diverting the shipment on the order of the shipper. Under the facts in evidence, the railroad company held these cars and did not reconsign them to the Kennesaw Hardwood Lumber Company's order until June 6th, and if there had been any settlement on May 31st, it is very certain that there was no title at that time in the Kennesaw Hardwood Lumber Company, but title was in plaintiff, and the defendant company, in obeying the order of the Kennesaw Hardwood Lumber Company to ship to some other consignee did so at its peril. The defendant would only be exonerated from liability to plaintiff in case the Kennesaw Hardwood Lumber Company, on June 6th, was the owner of the title to the property and plaintiff was not. If there had been a settlement on May 31st as to these very cars, then the title on June 6th was in plaintiff and when defendant reconsigned the lumber at the shipper's order it converted it as against plaintiff. The learned trial judge declining to pass on the question as to whether or not the settlement of May 31st covered the lumber in these cars and resting his refusal to give the instruction on the proposition that the defendant was not chargeable with notice of that settlement until it had been communicated to it, was in error. Having issued bills of lading in favor of the plaintiff, the defendant, either as a common carrier or as a warehouseman and bailee, acted at its peril when, in disregard of the bills of lading and on the order of the consignor alone, it diverted the shipment. It was bound to ascertain the facts in the case and its justification must turn in this case, not on its knowledge or want of knowledge of the facts, but on the real fact itself. The second declaration of law prayed for by plaintiff presented that hypothesis of the case and there was error in refusing it.

The plaintiff under the facts in the case, to repeat, held prima facie title under its bills of lading and when the railroad company defendant, on June 6th, obeyed the Kennesaw Hardwood Lumber Company's order to reconsign it, it did so at its peril. It was bound to know, bound to inquire, and bound to find out for its own protection, whether it was justified in ignoring the apparent title held by plaintiff as holder of the bills of lading, and that is a fact which must be submitted and passed on under the evidence in the case by the trier of fact. For this reason the finding and judgment of the circuit court is set aside and the cause remanded for new trial. *Goode, J.,* and *Nortoni, J.,* concur.