AMERICAN STORAGE & MOVING COMPANY, Appellant, v. WABASH RAILROAD COMPANY, Respondent.

### St. Louis Court of Appeals, December 14, 1909.

1. **COMMON CARRIERS: Delivery to Unauthorized Person.** Defendant carrier, having received of plaintiff for shipment goods belonging to another, on which plaintiff had a lien, under a bill of lading providing for their delivery to plaintiff, and having without authority delivered them to the owner, on his executing a bond of indemnity, was liable to plaintiff for the amount of its lien.

2. **———: Contract of Carriage.** An instrument reciting receipt by defendant carrier from plaintiff of the "following articles" to be delivered to plaintiff at destination, after which is a description of the articles, followed by the words "received subject to conditions of . . . . (defendant's) bill of lading," itself constitutes the contract, in the absence of evidence by either party of anything else in the way of a bill of lading having been made out, or any form in use having been agreed on as part of the contract.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey,* Judge.

REVERSED AND REMANDED.

*Davidson & Russell* for appellant.

(1) The receipt given constituted an agreement of the defendant to deliver the car of goods to the American Storage & Moving Company at Fortieth and Princeton avenue, Chicago, Illinois. Wohl v. Holt, 26 Wis. 703; Marshall & Michel Grain Co. v. Railroad, 176 Mo.

480; Marshall & Antles v. Railroad, 74 Mo. App. 81; Sash & Door Co. v. Railroad, 177 Mo. 641; Grain Co. v. Railroad, 120 Mo. App. 203; Milling Co. v. Railroad, 127 Mo. App. 80; Holland v. Railroad, 133 Mo. App. 694; Popham v. Barnard, 77 Mo. App. 628. (2) A common carrier is bound to transport goods to the point of destination designated by it, even though its lines do not reach such point and it is compelled to use another line in order to complete such transportation. Cases cited above; also, Buffington v. Railroad, 118 Mo. App. 476; Bushnell v. Railroad, 118 Mo. App. 618; McLendon v. Railroad, 119 Mo. App. 128; Ingwerson v. Railroad, 116 Mo. App. 139; Bank v. Railroad, 72 Mo. App. 82. (3) A receipt or bill of lading is the symbolical representative of the goods themselves, and the carrier has no right to make a delivery of the goods to anyone without the surrender of the receipt or bill of lading. Such unauthorized delivery is a conversion of the goods. American Z. L. & S. Co. v. Lead Works, 102 Mo. App. 158; Schwarzschild & S. Co. v. Railroad, 76 Mo. App. 623; Grain Co. v. Railroad, 176 Mo. 491; Ferry Co. v. Railroad, 128 Mo. 224. (4) Defendant was estopped by the representations of its chief clerk to deny that it delivered the goods to E. B. Leigh, and estopped to deny that such delivery was a violation of its contract of shipment. Layson v. Cooper, 174 Mo. 211; Hackett v. Van Franck, 105 Mo. App. 384; Ratcliff v. Lumpee, 82 Mo. App. 335.

*N. S. Brown* and *Walter N. Davis* for respondent.

(1) Plaintiff must recover, if at all, upon the contract as pleaded in the petition. Laclede Co. v. Iron Works, 169 Mo. 137; Sundmaker v. Lloyd, 114 Mo. 317; Barber v. Imp. Co., 131 Mo. App. 717. (2) If plaintiff relies upon a contract with defendant to carry the shipment to 40th and Princeton avenue, Chicago, Illinois, then the evidence of plaintiff must show the entire con-

tract. Plaintiff cannot fix liability upon the defendant by introducing in evidence only a part of the contract sued upon. (3) Under any view of the evidence in this case, the contract between plaintiff and defendant only obligated the defendant to carry the shipment to Chicago, and there make such delivery thereof as the plaintiff directed and authorized. (a) The Chicago Junction Railroad was the agent selected by the plaintiff to receive the shipment from defendant at Chicago, Illinois. (b) The delivery by the defendant to the Chicago Junction Railroad at Chicago was a complete performance of defendant's obligations under the contract. (c) Defendant cannot be held responsible for any misconduct of plaintiff's agent, the Chicago Junction Railroad.

On May 2, 1907, plaintiff shipped over defendant's railway line to Chicago, Illinois, a carload of household goods belonging to E. B. Leigh. The shipment was pursuant to the order of Leigh, owner of the goods, who at the time was indebted to plaintiff for some years' storage of the goods and for moving and packing them, all in the sum of $281, for which sum plaintiff held a lien on them. The goods were turned over to defendant company for transportation, consigned to the order of plaintiff, to which a bill of lading was given by defendant, and plaintiff indorsed on the bill an order to deliver the property to E. B. Leigh, or order, drew a draft on Leigh for $281, the amount of plaintiff's lien, attached the draft to the bill of lading, and put the same in a bank in St. Louis to be transmitted to Chicago for collection. The draft was not paid and the bill of lading was returned. With the indorsement it read as follows:

"Received from American Storage and Moving Company, in good order, by Wabash Railroad Co. the following articles marked below to be delivered to American Storage and Moving Company, Chicago,

Ills., Fortieth and Princeton Ave., c. o. Chicago Junction R. R. Co.

"One car H!. H. Goods, gross weight 20,000.    No. 71605 Wab.    (Stamped) Ewing avenue, received subject to conditions of the Wabash Railroad Company bill of lading.    May 2, 1907.

"E. J. McDONALD, Agt., per C. B.

(In pencil)    "E. K. Rel val. 5.00 cart.

"Deliver to E. B. Leigh or order.

"AMERICAN STORAGE AND MOVING CO.,

"W. H. Langdale."

A witness for plaintiff said the notation "c. o. Chicago Junction Railroad Co." was inserted in the receipt at Leigh's request. Defendant carried the goods to its terminal yards on Forty-seventh street in Chicago, where the car was transferred by a switch engine to Fortieth and Robey streets, and there taken in charge by the Chicago Junction Railroad Company, or Terminal, as it is called. The latter company is a terminal railroad company located in the city of Chicago, to which other railroad companies whose lines run into said city, deliver cars at their terminals to be transported over the tracks of the junction railroad to consignees when the latter have no places of business reached by the lines of the other companies. There is no proof in the record of what the Chicago Junction Railroad Company did with the household goods, or whether it did anything with them; but it is inferable it carried the goods from defendant's terminal yard to the place where they were turned over to Leigh, the owner. So far as the record shows, the delivery of the goods to Leigh was done by defendant. An attorney for plaintiff testified he talked with the chief clerk of defendant's freight department with regard to the matter, and that clerk stated the car had been delivered to Leigh, never mentioning the Chicago Junction Company in the conversation with the witness. The whole

tenor of the conversation, as related by the witness, is that defendant company had made the delivery. The witness said he asked the chief clerk why defendant had delivered the property to Leigh without the receipt or bill of lading being taken up and the clerk said Leigh had given a bond of indemnity to the Wabash Company, and Leigh, who was connected with a railway equipment company, and plaintiff, ought to get together and settle their differences. The receipt issued by defendant said the property was received for transportation subject to the conditions of defendant's bill of lading, no other bill of lading or receipt was put in evidence by either party, and it is to be inferred from the testimony no other was issued. Plaintiff requested this instruction which the court refused:

"The court instructs the jury that if they find and believe from the evidence that the plaintiff delivered the household goods mentioned in the complaint to the defendant for shipment to Chicago; that said goods were the property of one E. B. Leigh, and that said E. B. Leigh was indebted to plaintiff for moving, packing and storing said goods; and if you further find that said plaintiff consigned said goods to itself and received a bill of lading or receipt from said defendant by which said defendant agreed to deliver said goods to plaintiff or to plaintiff's order; and if you further find that plaintiff forwarded said bill of lading, together with a draft upon said E. B. Leigh, for the amount of plaintiff's charges against him; and that said E. B. Leigh refused to pay said draft and said receipt or bill of lading was returned to plaintiff; and if you further find that said defendant, without authority from plaintiff and without the surrender of said bill of lading or receipt, and without collecting the amount of plaintiff's charges against said Leigh for storing, moving and packing said goods, delivered said goods to said E. B. Leigh and that the said indebtedness of said E. B.

Leigh to this plaintiff has never been paid or discharged, you will find for the plaintiff."

At defendant's request the court directed the jury to return a verdict in its favor, which having been done and judgment entered accordingly, plaintiff appealed. The object of this action was to recover as damages the amount of plaintiff's lien on the goods or $281 alleged to have been lost by wrongful delivery of them to Leigh.

GOODE, J. (after stating the facts).—Plaintiff contends the transportation receipt, or bill of lading, issued by defendant, bound it to carry the property to Fortieth street and Princeton avenue, or, at least, made it responsible for the property to said destination; and hence, even allowing the words "care of Chicago Junction Railroad Co." authorized delivery to the junction railroad company instead of plaintiff, the designated consignee, a delivery to the junction company at any other point than Fortieth street and Princeton avenue was not a compliance with the bill of lading and did not discharge defendant from liability for plaintiff's loss of its lien. A case in point is cited, the doctrine of which would make defendant a through carrier and responsible for the property to the destination named—Fortieth street and Princeton avenue—notwithstanding the insertion in the receipt of the words "care of the Chicago Junction Railroad Co." [Wohl v. Holt, 26 Wis. 703.] Perhaps that rule is within the principle of our decisions; though we find none which deals with facts exactly like those before us. [Marshall, etc., Grain Co. v. Railroad, 176 Mo. 480; Western Sash & Door Co. v. Railroad, 177 Mo. 641.] Defendant contends it was authorized by the bill of lading to turn the car over to the junction company at any point in Chicago, and hence is not answerable to plaintiff for Leigh's having obtained the goods without discharging plaintiff's lien. We pass by the contention regarding the

point where defendant was empowered to turn the car over to the junction company, for in our view the question is not material as the record stands. From the evidence it appears the Wabash Company itself delivered this property to Leigh, and unquestionably it had no right to do so until it received authority from plaintiff, which was the consignee designated in the bill of lading and had retained that instrument. [2 Hutchinson, Carriers (M. & D. Ed.), secs. 668 *et seq.*] Although the property was put in charge of the junction company to be hauled from defendant's terminal to final destination, the admission of defendant's chief freight clerk would support, and well nigh compel, the conclusion that defendant retained control of the property for the purpose of delivery; and for defendant to turn it over to Leigh upon his executing a bond of indemnity to defendant, as the clerk said was done, was manifestly a breach of its obligation and also of good faith. It seems the purpose of this proceeding was to coerce plaintiff into some kind of a settlement with Leigh, by giving Leigh the advantage of possession of the goods, so plaintiff could no longer hold them under its lien, thereby compelling plaintiff to obtain redress directly by suing Leigh, or indirectly by suing defendant, which had taken a bond of indemnity from him. The instruction requested by plaintiff predicated as one fact to be found, in order for a verdict to be given in plaintiff's favor, that defendant itself had delivered the goods to Leigh. The instruction adhered strictly to the facts of the case, was sound law and should have been given.

As to whether, if defendant actually delivered the goods to the junction company and relinquished control over them, of which there is no proof in the record, it was a good delivery, we say not, but merely call attention to 2 Hutchinson on Carriers, sec. 676, and Schlesinger v. Railroad, 88 Mo. App. 273.

Hales v. Raines.

Defendant insists plaintiff cannot recover because it introduced no bill of lading except the so-called receipt, which recited the property was received subject to defendant's bill of lading. No proof was made by either side of another bill of lading for the shipment having been made out, or any form in use having been agreed upon as part of the contract, and the impression left is that nothing of the kind was done. This being so, the receipt itself constituted the contract between plaintiff and defendant. [Barrett v. Railroad, 9 Mo. App. 226.]

Two other technical points are made against plaintiff's right to recover, but we consider them without merit.

The judgment is reversed and the cause remanded. All concur.