CALVIN CARDER, Respondent, v. ATCHISON, TOPEKA & SANTA FE RAILWAY CO., Appellant.

St. Louis Court of Appeals, February 4, 1913.

1. **SALES: Stoppage in Transitu.** A seller of goods does not have the right of stoppage *in transitu* if the consignee is solvent.

2. **COMMON CARRIERS: Bill of Lading: Prima Facie Title to Shipment: Diverting Shipment.** Where a bill of lading shows a general consignment, and not to shipper's order or with other reservation, it prima facie vests the legal title to the shipment in the consignee; and if, in such case, the consignee be in fact the owner, the carrier would be liable to him for diverting the shipment while in transit without his consent.

3. ————: **Refusal to Divert Shipment: Liability of Carrier.** A common carrier is not liable for refusing, on demand of the shipper, to divert a shipment consigned generally to a consignee, where he does not furnish the carrier with reasonable proof that he is the true owner of the shipment and that it is free from any lien or claim in favor of the consignee named in the bill of lading, or reasonable opportunity is not afforded the carrier to ascertain the facts.

4. ————: ————: ————: **Sufficiency of Evidence.** In an action by a shipper against a common carrier for refusing, on his demand, to divert a shipment consigned generally to a consignee, *held* that the evidence failed to show that plaintiff furnished defendant with proof, at the time the demand was made, that he was the true owner of the shipment and that it was free from any lien or claim in favor of the consignee, or that defendant was afforded a reasonable opportunity to ascertain the facts, and hence it is *held* that plaintiff was not entitled to recover.

Appeal from Scotland Circuit Court.—*Hon. Chas. D. Stewart*, Judge.

REVERSED.

*Thomas R. Morrow, James P. Gilmore, N. M. Pettingill* and *John H. Lathrop* for appellant.

(1) Where a shipment is consigned direct to the consignee, the latter is presumed to be the owner. Garden Cultivator v. Railroad, 64 Mo. App. 305; Scharff v. Meyer, 133 Mo. 428; Bank v. Ewing, 107 Mo. App. 178; Cotton Co. v. Red River, 30 So. 303; McCauley v. Davidson, 13 Minn. 162; Frank v. Railroad, 9 Pa. Sup. Ct. 129. (2) If in fact the consignee had been the owner, as it was presumed to be, the carrier would have been liable had it diverted the shipment. Therefore, it had a right to demand substantial proof of ownership in the consignor before making a diversion. Smith v. Railroad, 145 Mo. App. 395; Moving Co. v. Railroad, 146 Mo. App. 224; Bank v. Railroad, 135 Mo. App. 74; Grain Co. v. Railroad, 176 Mo. 480. (3) The information which was given the carrier and the other circumstances in the case were not such as would require the carrier to make a diversion, thereby taking the goods from the consignee which was apparently the owner. Ryan v. Railroad, 95 N. W. (Minn.) 758; Armentrout v. Railroad, 1 Mo. App. 158. (4) The amended statement filed in the circuit court attempted to introduce a new cause of action, or new ground of liability, and the plaintiff should not be allowed to recover on it. R. S. 1909, secs. 7585, 7587.

*J. W. Waters* and *Smoot & Smoot* for respondents.

(1) So long as the bill of lading representing the goods is in the hands of the person to whom it was originally issued, there could of course be no objection to the substitution of another bill by agreement of the parties. 6 Cyc. page 425, subdivision 4. A carrier, like any other bailee, must respect the apparent ownership or the shipper from whom he received the possession and it cannot deny the shipper's right to the

goods, unless in case the transaction is such as to import a transfer of title to the consignee. Although, as a matter of fact, the shipper is not the real owner. 6 Cyc. 434, subdivision b; Railroad v. McComas, 33 Ill. 185; Railroad v. Schwartz, 11 Ill. App. 482; Bank v. Railroad, 158 Mo. App. 519; Lord Bushnel Co. v. Railroad, 155 Mo. App. 375. (2) It is too late now for the appellant to make any contention over the amendment. Bank v. Crump, 116 Mo. App. 371.

ALLEN, J.—This is an action by plaintiff, respondent here, against the appellant railway company, for loss incurred by plaintiff growing out of the failure of defendant to divert a shipment of cattle while en route, as requested by plaintiff, the shipper.

It appears that on April 14, 1909, Calvin Carder, the plaintiff, made a shipment of cattle from Rutledge, Missouri, a shipping point on the line of defendant's railway, to Chicago, Illinois, over defendant's line of road. The shipment was consigned direct to the National Live Stock Commission Company at Chicago; the defendant issuing therefor an ordinary bill of lading to the said National Live Stock Commission Company as consignee. Rutledge is a small town about forty-four miles west of Fort Madison, Iowa, through which defendant's line of railway extends.

The plaintiff accompanied the shipment of stock, and a short time before reaching a station called Shopton, which is some two miles west of Fort Madison and the terminal of the latter station, the plaintiff met one Payne, a cattle buyer, with whom he negotiated for the sale of the cattle. Payne lived at Monmouth, Illinois, a point off of defendant's line of railway and on the line of the Iowa Central Railway Company. Upon arrival at Shopton, and while the train waited there, the cattle were transferred from one car to another because, as it appears, plaintiff claimed they were too crowded in the car and that he wanted them put into

a larger car or into two cars. While the car was standing on the siding, and apparently before the cattle were changed to another car, plaintiff and Payne agreed upon terms of sale of the cattle by plaintiff to Payne, the latter telling plaintiff to have the cattle rebilled to Monmouth, Illinois. Before the train left Shopton, plaintiff inquired about having the cattle rebilled to Payne at Monmouth, and was told he would have to see the agent at Fort Madison. The yard master at Shopton telephoned the agent at Fort Madison saying that there was a man who wanted to divert some cattle and that they would "be up there in a minute or so." The shipment was, at that time, on defendant's train No. 20 which, as the evidence shows, left Shopton about five o'clock, reaching the depot at Fort Madison about five minutes later. The train made an ordinary passenger stop of one or two minutes. It appears from the evidence that the point of junction of defendant's line of railroad with that of the Iowa Central, over which the shipment would have had to go had it been diverted, was a town named Nemo, about forty-two miles east of Fort Madison; so that whether diverted or not the shipment would necessarily pass through Fort Madison.

Upon the arrival at the station at Fort Madison, and while train No. 20 was standing in front of this station, the conductor thereof saw the agent, one Ilette, and told him that there was a man on this train who wanted to divert a shipment of cattle. The plaintiff, accompanied by Payne, appeared at the window of the station and demanded of the agent that he rebill the cattle to Payne at Monmouth, Illinois, declaring that he, the plaintiff, was the owner of the cattle and that he had agreed to sell them to Payne. Upon inquiry the agent learned that the cattle were consigned direct to the National Live Stock Commission Company of Chicago as consignee. There is no evidence that plaintiff exhibited to defendant's agent the bill of

lading; nor in fact is there any evidence that plaintiff then had the bill of lading in his possession, except the testimony of Payne, whose recollection of the facts did not at the trial appear to be very distinct, and who, being asked whether he had seen the bill of lading, said: "Yes, I believe I did" . . . "I think he showed it to me." The agent was not acquainted with plaintiff Carder although he had seen his name on waybills, and did not know whether or not plaintiff was in fact the owner of the cattle. There was no evidence that the station agent was acquainted with Payne who accompanied Carder.

The evidence shows that the agent told the plaintiff that he could not, under the circumstances, divert the shipment, but that the matter would have to be submitted to defendant's auditor, and that this would be done if information could be secured before the train reached Nemo, the junction point mentioned above. The evidence showed that the running time of this train from Fort Madison to Nemo was an hour and forty minutes. It appears that the agent told plaintiff that he would endeavor to communicate with the agent at Rutledge, the point of origin of the shipment, in order to determine, if possible, whether the plaintiff was the actual owner of the cattle.

The train left Fort Madison, with the car of cattle, and with plaintiff and Payne on the train. It appears that defendant's agent at Fort Madison, with whom plaintiff had conversed, then endeavored to reach the agent or operator at Rutledge by telegraph, but was unable to get any answer from the operator there. It was after five o'clock and, according to the testimony of Ilette, defendant's said agent, there was no operator at Rutledge from five o'clock p. m. until ten o'clock p. m. Defendant's agent at Fort Madison, not obtaining any information, no steps were taken to divert the shipment, and the same went on to Chicago, its original destination, accompanied by the

plaintiff. It was there delivered to the National Live Stock Commission Company, the original consignee, and the latter sold the cattle for a sum less than the price which Payne had agreed to pay plaintiff for them, resulting in the net loss to plaintiff of $111.43.

The suit was originally begun before a justice of the peace, where plaintiff had judgment, from which judgment defendant duly perfected its appeal to the circuit court, where the cause was tried before the court and a jury. Before going to trial in the circuit court, the plaintiff filed an amended statement differing somewhat from the statement filed before the justice, but it will not be necessary to set out these statements. Upon the trial in the circuit court, at the close of plaintiff's evidence, the defendant offered a peremptory instruction in the nature of a demurrer to the evidence, which was refused by the court. At the close of all the evidence defendant again offered a like instruction, which was likewise refused. The court gave three instructions requested by plaintiff and refused those requested by defendant. It is unnecessary to set out these instructions. There was a verdict for plaintiff for the sum of $111.43, and judgment entered accordingly. After an unsuccessful motion for a new trial defendant has appealed to this court.

We will say at the outset that the well-known doctrine of stoppage *in transitu* is not here involved, for the reason that plaintiff does not invoke this doctrine, and for the further reason that the right did not exist, inasmuch as the consignee, the National Live Stock Commission Company, was not insolvent, according to plaintiff's own testimony. [Smith Company v. Railroad, 145 Mo. App. 394, 122 S. W. 342; Benjamin on Sales (6 Ed. 1892), p. 808.]

Appellant here concedes the right of the true owner of property in the possession of a common carrier for transportation to have the same, while in tran-

sit, diverted at a station on the route between the shipping point and the place of destination, provided that reasonable evidence of such ownership is given to the carrier to protect it in so diverting the shipment. Appellant insists however that sufficient evidence of plaintiff's ownership was not given to the defendant's agent in question to warrant diverting or stopping the goods in transit.

It is elementary that, where the bill of lading shows a general consignment, and not one to shipper's order, or with other reservation, it *prima facie* vests the legal title to the goods in the consignee, and the latter is presumed to be the owner of the property covered by the bill of lading. [Garden Cultivator Company v. Railway Co., 64 Mo. App. 305; Scharff v. Meyer, 133 Mo. 428, 34 S. W. 858; Ryan v. Railway Co., 90 Minn. 12; Ratzer v. Railroad, 64 Minn. 245, 58 Am. St. Rep. 530; Nebraska Meal Mills v. Railway Co., 64 Ark. 169, 41 S. W. 810, 38 L. R. A. 358.] And if the consignee be in fact the owner, as is the presumption, the carrier becomes liable to the consignee if it diverts the goods while in transit without the consignee's authority. [Smith v. Railway Co., 145 Mo. App. 395, 122 S. W. 342; American Storage, etc. Co. v. Railroad, 146 Mo. App. 224, 123 S. W. 964; Bank of Commerce v. Railway Co., 135 Mo. App. 74, 115 S. W. 517; Ryan v. Great Northern Railway Co., supra; 2 Hutchinson, Carriers (M. & D. Ed.), sec. 668, *et seq.*] As we have said, the consignment was direct to the consignee, not to shipper's order, or with other reservation.

In Garden Cultivator Co. v. Railway Co., supra, this court said: "The bill of lading shows a consignment of cultivators generally. The consignment was not to shipper's order. There was no reservation or qualifying terms in the bill. It is settled by a long line of adjudications cited in Porter's Law of Bills of Lading, sec. 471, note 1, that the effect of such a

bill of lading is to vest the legal title to the goods shipped in the consignee. Such a bill is prima facie evidence that the property therein specified belongs to the consignee.''

In Ryan v. Great Northern Railway Company, supra, the plaintiff was the consignee and sued for the failure of the carrier to comply with his request to divert a shipment of apples while in transit at a point between the place of shipment and its destination. At the time of the request, plaintiff did not have the bill of lading, and could not produce it or other evidence of his title to the property, and the defendant's agent refused to divert the shipment. The court said:

''It is proper, on the facts, to assume for the purpose of this case that the owner of goods transported by a common carrier has the right to have his consignment, while in transit, diverted at any intermediate point through which it passes; but such right of diversion cannot add to the burdens of the carrier, or require it to do more than comply with a proper and legal demand therefor. [Hutchinson on Carriers (2 Ed.), 337, and notes; 2 Am. & Eng. Ency. Law (2 Ed.), p. 214.] It necessarily follows that some evidence of the right of the party to make the diversion may be demanded by the carrier before the goods reach the stopping point, for the person authorized to have that right could not require the goods to be reshipped and returned at the extra expense of the carrier; hence the question still remains whether the request to have the car put off at Devil's Lake required the defendant to comply therewith without the production of the bill of lading or any further evidence of plaintiff's ownership of the property than was furnished in this case. . . . ''If we were to hold upon the facts in this case that the actual consignee of goods in transit could divert or rightfully demand possession at an intermediate point without the production of the *prima facie*

evidence of his ownership, or some assurance or reasonable proof that he was entitled to have his reqeust complied with, we would deny to the carrier due protection under the rule we have already adopted, which would impose the onerous and oppressive burden of determining the ownership of the proerty upon which it must act at its peril.''

As we have said above, the right of plaintiff to have had the shipment diverted is not questioned here, provided reasonable proof had been furnished the defendant that plaintiff was the true owner of the property and that the same was free from any claim or lien in favor of the consignee named in the bill of lading. It was incumbent upon plaintiff to furnish such proof, or, in any event, reasonable opportunity should have been afforded to the defendant to ascertain fully the facts regarding the ownership of the property in order that it might protect itself in dealing with the same.

As to the proof of ownership offered by plaintiff and the opportunity afforded defendant's agent to ascertain the facts, the record shows that the agent first learned by means of a telephone message from Shopton that there was a man there who wanted a shipment of cattle diverted, and that they would be up (i. e. to the station at Fort Madison) ''in a minute or two.'' The train arrived at the Fort Madison station about five minutes later and made what the station agent terms a passenger stop of a minute or two. It was then shortly after five o'clock in the afternoon. It was during the brief interval of this stop that the conversation occurred between plaintiff and defendant's agent. The agent testified that he endeavored to communicate by telegraph with Rutledge, the point of origin of the shipment, for the purpose of endeavoring to ascertain any facts which might justify diverting the car at Nemo, forty-two miles further up the line. The operator at Rutledge did not

respond. It was late in the day and it does not appear that the agent could have reached the consignee in Chicago, or in any other way have gained reliable information as to the true ownership of the property, in time to have diverted the shipment at Nemo. It is true that plaintiff told the agent that he was the true owner, saying, "By God I own them;" but the plaintiff appears to have been a stranger to the agent. Evidence is lacking that plaintiff produced the bill of lading; nor does it follow that the mere production of a bill of lading, unindorsed by the consignee, without proof even of the identity of the holder, would of itself have warranted defendant's agent in diverting the car.

Respondent relies upon Lord & Bushnell Co. v. Railroad, 155 Mo. App. 175, 134 S. W. 111, as authority for the proposition that the shipper has the right to stop or divert a car at an intermediate point on the route. That case has little bearing upon the question involved here. There the consignee undertook to divert the shipment. The carrier had failed to route the shipment in accordance with the routing directions of plaintiff's consignor, so that when diversion was requested by the consignee at an intermediate point on the route, as directed by the shipper, it was impossible to comply with the request. The case merely recognizes the fact that the right to divert a shipment exists, a question about which there is no dispute here.

We are also cited by respondents to People's State Savings Bank v. Railroad, 158 Mo. App. 519, 138 S. W. 915. This case is readily distinguishable from the one before us, because the bill of lading was to shipper's order, and the question of the presumptive ownership of the goods by the consignee in a flat bill of lading is not involved.

In his statement filed in the justice court, plaintiff based his cause of action solely upon his demand that the shipment be diverted. In his amended state-

ment filed in the circuit court, plaintiff alleged that he "went to the agent of defendant at Fort Madison and demanded that he give him possession of said cattle or rebill the same to Payne at Monmouth," and that the agent "refused to surrender said cattle to plaintiff or rebill the same." We shall not stop to consider appellant's contention that this was a change in the cause of action; for, though plaintiff testified that he also demanded of defendant's agent that he unload the cattle at Fort Madison, clearly plaintiff could no more require the defendant to delay the shipment and risk the consequences thereof, than he could require defendant to divert the same.

We are not concerned with the question of authority of defendant's agent to divert the shipment. Though plaintiff was the true owner, the record fails to disclose that defendant was furnished with any reasonable proof thereof; nor does it appear that defendant's agent had any reasonable opportunity to ascertain the facts within the time which the circumstances allowed.

And considering alone the evidence offered by plaintiff, and conceding the whole of it to be true, it simply shows that plaintiff, during a short stop at this station, claimed that he was the owner of the carload of cattle and demanded that the shipment be stopped or diverted, without offering reasonable proof of his ownership of the goods or right to exercise control over them; that defendant's agent showed a willingness to comply with plaintiff's demand, provided he could ascertain reasonable proof as to the facts; it shows that the goods were consigned to the National Live Stock Commission Company, and does not show that plaintiff offered reasonable proof to rebut the presumption of ownership by the consignee; neither does it show that defendant's agent had any reasonable opportunity to ascertain the facts as to plaintiff's ownership or right of control over the

goods, in the time within which he was required to act.

It follows that plaintiff's evidence, viewed in the light most favorable to him, was not sufficient to entitle him to go to the jury, and the demurrer to the evidence should have been sustained at the close of plaintiff's case.

For the reasons given above the judgment of the circuit court is reversed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.