## PEOPLE'S STATE SAVINGS BANK, Appellant, v. MISSOURI, KANSAS & TEXAS RAILWAY et al., Respondents.

St. Louis Court of Appeals, June 30, 1911.

1. **CONVERSION: What Constitutes.** An unlawful interference with the property of another and the exercising of dominion over it, in disregard or defiance, and to the exclusion, of the owner's rights is a conversion.

2. **COMMON CARRIERS: Routing Diections: Rights of Shipper: Duty of Carrier: Conversion.** The shipper has a right to prescribe reasonable conditions upon which his goods shall be delivered to a connecting carrier, and the initial carrier becomes his agent for that purpose, charged with the primary duty of executing the shipping directions as given, unless it be in the case of an extraordinary emergency; and a departure from such shipping directions and delivery of the consignment to a connecting carrier contrary thereto amounts to a conversion on the part of the initial carrier.

3. ————: **Negotiable Bill of Lading: Rights of Holder.** Where a common carrier issues a negotiable bill of lading to "shipper's order," no other than the holder of such bill can authorize an interference with the shipment or a deviation from the shipper's instructions.

4. ————: **Improper Delivery of Shipment: Conversion: Facts Stated.** An initial carrier issued a negotiable bill of lading for a shipment of horses, consigned to the shipper or "shipper's

order" at destination, which bill was immediately transferred to plaintiff. The initial carrier transported the horses to the end of its line, where they were tendered to a connecting carrier, which refused to accept them under the "shipper's order" bill, whereupon they were unloaded, and negotiations were had between the connecting carrier's agent, the agent of the initial carrier and plaintiff for a release of the "shipper's order" clause, but plaintiff having refused, negotiations were continued with the attendant in charge of the horses, who surrendered the live stock contract issued by the initial carrier, and contracted with the connecting carrier, in the name of the shipper, for the transportation of the horses to destination, without the "shipper's order" clause, naming a bank at destina- ation as the consignee. On arrival at destination, the horses were delivered to the shipper, who sold some of them, and refused the balance, which were sold by the carrier, and a draft, which had been sent by plaintiff to the bank at destina- tion for collection, with the bill of lading attached, remained unpaid. *Held*, that the initial carrier, by delivering the horses to the connecting carrier, contrary to the shipping instructions, was guilty of a conversion; and that the connecting carrier, by entering into the contract with the attendant, who was without authority in the matter, thereby assuming to change the contract of shipment, was guilty of a conversion; and that, though the two carriers performed separate acts of dominion over the shipment, inconsistent with and to the ex- clusion of plaintiff's right therein, such separate acts con- curred in producing one tort, and the matter of the carriers' joint liability was therefore a question for the jury.

5. **CONVERSION: Demand Unnecessary, When.** Although a party is in the legal possession of goods, if he actually converts them, no demand is necessary before instituting a suit therefor.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

REVERSED AND REMANDED.

*Zeigler & Dana* and *James R. Van Slyke* for ap- pellant.

(1) The bill of lading which was to shipper's order and was negotiable according to its terms under said shipping directions, by delivery to the plaintiff bank, for a valuable consideration, properly endorsed, passed the title to said property to plaintiff herein.

Midland Natl. Co. v. Railroad, 132 Mo. 492; American Z. L. & S. Co. v. Lead Wks., 102 Mo. App. 159; Webster v. Bear, 141 Mo. App. 531. (2) The change of the shipping directions by the Louisville & Nashville Railroad Company at East St. Louis in releasing the shipper's order clause and consigning said horses to a different consignee constituted a conversion of said property at said time and place and placed the liability of insurer upon said defendant for whatever loss results. Midland National Co. v. Railroad, 132 Mo. 492; S. & S. Co. v. Railroad, 76 Mo. App. 623; American Z. L. & S. Co. v. Lead Wks., 102 Mo. App. 159; Forbes v. B. & L. R. Co., 133 Mo. 154; Shewalter v. Railroad, 84 Mo. App. 589; Miller v. Long, 84 Mo. App. 219; Marshal & Mitchell Grain Co. v. Railroad, 176 Mo. 480; Wiggins Ferry Co. v. Railroad, 128 Mo. 225; Sparks v. Purdy, 11 Mo. 219; National Bank v. Railroad, 135 Mo. App. 74; Weaver v. Railroad, 135 Mo. App. 217; Smith v. Railroad, 145 Mo. App. 394; Express Co. v. Kountze Bros., 8 Wall. 342; Seawey v. Union Trans. Co., 106 Wis. 394; Railroad v. Allison, 59 Tex. 193; Merrick v. Webster, 3 Mich. 268; Mo. J. & K. C. Co. v. Bayshore L. Co., 51 So. 956; F. & C. C. R. Co. v. Jensen, 108 P. 974; Johnson v. Railroad, 33 N. Y. 610; Mich. S. & N. I. Rd. Co. v. Day, 20 Ill. 375; Davis v. Garrett, 6 Bing. (Eng.) 716; Crossby v. Fitch, 31 Am. Dec. 745; Phillips v. Bingham, 26 Ga. 617; Powers v. Davenport, 43 Am. Dec. 100; Kahn v. Md. Trans. Co., 76 Ill. 520; Stewart v. Md. Trans. Co., 47 Iowa 229; Railroad v. Odil, 96 Tenn. 61; 5 Am. and Eng. Ency. Law, sec. 423; 2 Hutchinson on Carriers, 679. (3) That the Missouri, Kansas & Texas Railroad Company, through its agents, converted said goods to its own use by delivering same to the Louisville & Nashville Railroad Company when it knew said goods were not being accepted by said connecting carrier under the original shipping instructions. Case cited above. (4) The measure of dam-

ages in conversion is the value of the property at destination less the cost of transportation. Blackmer and Post v. Railroad, 101 Mo. App. 557.

*Stewart, Bryan, Christie & Williams* and *Harold R. Small* for respondent, Louisville & Nashville Railroad Company.

*Lee W. Hagerman* for respondent, Missouri, Kansas & Texas Railway Company;

(1) The case as alleged in the petition was one sounding purely in tort, namely, a conversion by a violation of the common law duty owed by a carrier to a shipper, but the case attempted to be proven was a case in tort arising *ex contractu*. This was sufficient to justify the sustaining of the demurrer to the evidence. Ingwersen v. Railroad, 205 Mo. 328. (2) The action of the Louisville and Nashville Railroad Company was for the benefit and not to the detriment of the interests of the plaintiff, and was not a conversion. Nanson v. Jacobs, 93 Md. 331; Live Stock Com. Co. v. Railroad, 87 Mo. App. 330; Shelnut v. Railroad, 18 L. R. A. 494. (3) It is true an unnecessary deviation—for example, an unnecessary deviation in route of a dead freight shipment—constitutes conversion as held in the cases cited by plaintiff. An emergency, however, justifies, in circumstances such as existed in this case, deviation from the instructions of the absent owner, had the shipment been a dead shipment, and certainly where the shipment was, as in this case, a shipment of live stock. Empire State Cattle Co. v. Railroad, 210 U. S. 1; Weaver v. Railroad, 135 Mo. App. 210; Hutchinson on Carriers (3 Ed.), secs. 621, 646. (4) Neither defendant is liable for the action, if wrongful, of the Southern Railroad Company, in permitting the horses to be taken from the car at Batesburg. Section 20 of the Interstate Commerce Act, effective in June, 1906, did not apply

to this shipment made in April, 1906, so as to make the Missouri, Kansas & Texas Railroad Company liable as initial carrier. The shipment originated in Kansas and so was not subject to the similar section of the Missouri statute. Each carrier was liable only for what occurred on its own line. Myrick v. Railroad, 107 U. S. 102; Nenno v. Railroad, 105 Mo. App. 540; Crouch v. Railroad, 42 Mo. App. 248; Grain & Elevator Co. v. Railroad, 138 Mo. 658. (5) To constitute conversion, a demand must be proved. No demand was proved. Nanson v. Jacobs, 93 Mo. 331. (6) Plaintiff by reason of the billing was not justified in abandoning the shipment. Hutchinson on Carriers (3 Ed.), sec. 621.

NORTONI, J.—This is an action in the nature of trover as for conversion. At the conclusion of the evidence for plaintiff, the court peremptorily directed a verdict for both defendants and plaintiff prosecutes the appeal.

Defendant Missouri, Kansas & Texas Railway Company, incorporated, is a common carrier of freight and as such owns and operates a line of railroad from Coffeyville, in the State of Kansas, to St. Louis, Missouri, and defendant Louisville & Nashville Railroad Company, incorporated, is a common carrier of like character and owns and operates a line of railroad from East St. Louis, Illinois, to Nashville, Tennessee and other points south and east thereof. Plaintiff, People's State Savings Bank, is a corporation engaged in the banking business at Coffeyville in the State of Kansas and as such is the assignee for value of a consignment of nine horses, alleged to have been converted by defendants, which consignment was made by John McNulty, at Coffeyville, to himself, or shipper's order, at Batesburg, South Carolina, and was immediately transferred to plaintiff bank by an assignment of the bill of lading therefor. The suit proceeds

against both defendants as for the joint tort of converting the shipment of horses at their point of connection, East St. Louis, Illinois, through the one delivering the shipment to the other, contrary to instructions, and the other actually changing the shipping instructions on the consignment.

It appears John McNulty was engaged in the business of buying horses at Coffeyville, Kansas, and shipping them to Batesburg, South Carolina, over the Missouri, Kansas & Texas Railway to St. Louis and through its agency across the Mississippi river to the point of connection with the Louisville & Nashville Railroad, thence over that and other lines to Batesburg. Plaintiff bank furnished McNulty with the means to purchase the load of horses alleged to have been converted by defendants and after McNulty delivered the horses to the Missouri, Kansas & Texas Railway at Coffeyville for shipment and received from it a negotiable bill of lading therefor, reciting that the horses were consigned to John McNulty or to his order at Batesburg, South Carolina, he assigned and delivered this bill of lading to plaintiff, People's State Savings Bank, for $1500. Plaintiff immediately made a draft on the consignee, John McNulty, at Batesburg, South Carolina, through the Citizens' Bank of that place and forwarded it there for collection, with instructions, upon the payment of the draft by McNulty, to deliver him the bill of lading for the nine head of horses. At the time defendant Missouri, Kansas & Texas Railway Company issued this negotiable bill of lading to McNulty, consignee, or his order, it also issued a stock shipment contract of some kind to him, which authorized an attendant to travel with the horses to the end of its line at St. Louis, Missouri, and for a return pass to Coffeyville, Kansas. This stock shipment contract was delivered by McNulty to one Coverdale, who accompanied the shipment for the purpose of caring for the horses, but the stock con-

tract itself which Coverdale bore was not introduced in evidence and we are unadvised of its contents except as to what may be gleaned pertaining to the same from numerous statements of the witnesses. Enough appears as to this contract, however, to disclose that it, too, was issued by the Missouri, Kansas & Texas Railway Company to McNulty, or order, and marked "notify Citizens' Bank, Batesburg, South Carolina." The negotiable bill of lading issued by the Missouri, Kansas & Texas Railway Company to McNulty, which is in the usual form of bills of lading for goods, wares and merchandise, recites the shipment of nine horses by McNulty to himself, shipper's order, notify at Batesburg, South Carolina, and evinces a contract on the part of the Missouri, Kansas & Texas Railway to carry the shipment to the end of its line, St. Louis, Missouri, and even beyond and across the Mississippi river at that place for delivery to the Louisville & Nashville Railroad Company, with shipping directions to the effect that the consignment was to be carried through by the Louisville & Nashville Railroad and its connecting carriers to McNulty, or his order, at Batesburg. As we understand the evidence, the stock contract issued to McNulty for the use of Coverdale in accompanying the shipment is to the same effect, substantially, in so far as important here; but of it the plaintiff had no knowledge whatever. There is nothing in either of these contracts, however, imposing a duty on the Missouri, Kansas & Texas Railway Company to do more than transport the shipment to East St. Louis, Illinois, and make delivery thereof there, under the shipping directions annexed, to the Louisville & Nashville Railroad Company.

It appears that the Missouri, Kansas & Texas Railway, in performing its contract, transported the horses to the end of its line, St. Louis, Missouri, and across the Mississippi river by a connecting carrier where it unloaded them at the National Stock Yards,

East St. Louis, Illinois, and through the agency of the stock yards company tendered the shipment to the Louisville & Nashville Railway Company, in accordance with the shipping directions, on Friday morning. The Louisville & Nashville Railroad Company refused to accept the consignment, however, for the reason it was made to John McNulty, shipper's order, notify, as it has a standing rule against such shipments of live stock. The Louisville & Nashville Railroad Company notified the Missouri, Kansas & Texas Railway Company to this effect, and the horses were therefore retained by the latter company at the National Stock Yard in East St. Louis during Friday, Saturday and Sunday while negotiations were being had, to the end of effecting a delivery to the Louisville & Nashville Railroad Company. It appears the Missouri, Kansas & Texas Railway Company endeavored to communicate by wire with John McNulty at Coffeyville, Kansas that the Louisville & Nashville Railroad Company would not accept the shipment so billed—"shipper's order, notify"—but was unable to reach him, as McNulty had left Coffeyville on a passenger train for Batesburg, South Carolina, in order to meet the shipment on its arrival. Finally, on Sunday, the Missouri, Kansas & Texas station agent at Coffeyville, Kansas, called upon the president of plaintiff bank and informed him of the situation, with a request that he release the shipper's order clause in the bill of lading, so that the Missouri, Kansas & Texas Railway might be able to deliver the shipment to the Louisville & Nashville Railroad and the Louisville & Nashville Railroad accept it unincumbered with the rights entailed by the shipper's order clause. Mr. Woodward, president of plaintiff bank, informed the Missouri, Kansas & Texas Railway agent that the bank would not release this clause or modify the shipping contract in any respect, for the reason that its security for the $1500 furnished to McNulty would be destroyed

thereby. Whether this refusal was communicated to the Louisville & Nashville Railroad Company at East St. Louis does not appear directly but, from all the facts and circumstances in evidence, it is to be inferred that it was. Having failed to obtain a release of the shipper's order clause, on Sunday evening, the live stock agent of defendant Louisville & Nashville Railroad Company at East St. Louis procured from Coverdale, the attendant, a surrender of the live stock contract in his possession and entered into a contract with Coverdale, in the name of McNulty, for transportation of the horses over its lines and for delivery to subsequent connecting carriers without the shipper's order clause. This new arrangement entered into at East St. Louis, Illinois, between the live stock agent of the Louisville & Nashville Railroad and the attendant, Coverdale, was without the knowledge or consent of either plaintiff bank or McNulty, the shipper, and it stipulated a straight consignment of the horses to the Citizens' Bank of Batesburg, South Carolina. It conclusively appears in the case that Coverdale, the attendant, who signed McNulty's name to this contract, was neither the agent of plaintiff bank nor of McNulty, though he signed McNulty's name and purported to consent to the change of the consignee from McNulty, shipper's order, notify Citizens' Bank, Batesburg, to the benefit of plaintiff bank, to a new and distinct consignee, the Citizens' Bank of Batesburg, South Carolina. After this arrangement was made between the live stock agent of the Louisville & Nashville Railroad and Coverdale at East St. Louis on Sunday evening, whereby the billing of the shipment was changed contrary to the directions contained in the original billing, defendant Missouri, Kansas & Texas Railway Company, through the agency of the National Stock Yards Company, delivered the horses to the Louisville & Nashville Railroad Company for transportation in accordance with its new

contract.    The shipment proceeded safely over the Louisville & Nashville Railroad and was finally delivered at Batesburg, South Carolina by a connecting or subsequent carrier, the Southern Railway Company, to McNulty, notwithstanding the billing to the Citizens' Bank.  McNulty sold two horses included in the shipment immediately and another one, the most valuable animal of the consignment, which was sick at the time the shipment arrived, died soon thereafter. McNulty refused to pay the draft drawn on him by plaintiff through the Citizens' Bank and surrendered the remaining horses to the agent of the Southern Railway Company, which company advertised and sold them a few weeks thereafter.  The Citizens' Bank returned the draft, with bill of lading attached, to plaintiff and the proof is that it has never been paid.  The Southern Railway Company is not a party to this suit and we regard the matters pertaining to it and the delivery of the horses to McNulty, instead of to the Citizens' Bank of Batesburg directly (which bank, according to the new shipping arrangement with Coverdale, was the consignee, without any limitation), as wholly unimportant, for the conversion counted upon is the joint act of the Missouri, Kansas & Texas Railway Company and the Louisville & Nashville Railroad Company at East St. Louis, when the one consented to the wrongful exercise of dominion over the horses and delivered them contrary to instructions to the other, who assumed authority to change the shipping contract.    There can be no doubt that a conversion is shown when one person unlawfully interferes with the property of another and assumes and exercises dominion over it in disregard or in defiance, and to the exclusion, of the owner's rights, as here.    Any such interference with the owner's property and exercise of dominion over it, in defiance of and inconsistent with his rights, constitutes a conversion. [2 Cooley

on Torts (3 Ed.), 859, 860; 3 Blackstone Comm., p. 153; Shewalter v. Mo. Pac. R. Co., 84 Mo. App. 589, 599; Sparks v. Purdy, 11 Mo. 219; Miller v. Lange, 84 Mo. App. 219; Banking House v. Brooks, 52 Mo. App. 364; 28 Am. & Eng. Ency. Law (2 Ed.), 679, 680, 681.]

Upon accepting the shipment for transportation to the end of its own line and across the Mississippi river for delivery to the Louisville & Nashville Railroad Company under a negotiable bill of lading prescribing the shipper's order as a term of the contract and with instructions to so deliver it to the connecting carrier, the law devolved upon defendant Missouri, Kansas & Texas Railway Company the duty to make the delivery accordingly, or not at all; for no one can doubt the right of the shipper to prescribe such reasonable conditions upon which his goods shall be delivered to the connecting carrier or that the initial carrier becomes his agent for the purpose, charged with the primary duty of executing the shipping directions as given, if he so accepts the goods, unless it be in the case of an extraordinary emergency, of which nothing appears here. If a common carrier assumes to depart from such shipping instructions and delivers the consignment to a connecting carrier contrary thereto, he is guilty of conversion for thus exercising dominion over plaintiff's property without regard to his rights, and becomes an insurer if the goods are thereafter lost from any cause. [Weaver v. So. R. Co., 135 Mo. App. 210, 115 S. W. 500; Wiggins Ferry Co. v. C. & A. R. Co., 128 Mo. 224, 27 S. W. 568, 30 S. W. 430; Marshall, etc. Co. v. K. C. Ft. S., etc, R. Co., 176 Mo. 480, 75 S. W. 638; Johnson v. N. Y. Central R. Co., 33 N. Y. 610; S. D. Seavy Co. v. Union Transit Co., 106 Wis. 394; 2 Cooley on Torts (3 Ed.), 861, 862; 1 Hutchinson on Carriers (3 Ed.), sec. 130; see also 1 Hutchinson on Carriers (3 Ed.), sec. 26.]

It is obvious defendant Missouri, Kansas & Texas Railway Company had knowledge of the rights of plaintiff bank in the premises, for its agent called and interviewed the president of the bank on Sunday, to the end of procuring a release of the shipper's order clause in the bill of lading before the horses were delivered to the Louisville & Nashville Railroad. But, aside from all of this, though Coverdale were the agent of McNulty, the Missouri, Kansas & Texas Railway Company remained responsible to the same extent after he entered into a new contract with the Louisville & Nashville Railroad Company in the name of McNulty as before, for, having issued a negotiable bill of lading to shipper's order, which was outstanding, it knew no one other than the holder of that bill of lading could authorize an interference with the shipment or deviation from the instructions, and Coverdale did not possess the bill of lading. [White Live Stock, etc., Co. v. Chicago, etc., R. Co., 87 Mo. App. 330; Ober v. Indianapolis, etc., R. Co., 13 Mo. App. 81.] Besides, there is nothing in the case suggesting that Coverdale was the agent of McNulty even, except for the purpose to feed and care for the horses, and as to the bank, Coverdale in no manner represented it, for it was wholly uninformed of his presence with the shipment. It appearing that defendant Missouri, Kansas & Texas Railway Company delivered the shipment to the Louisville & Nashville Railroad Company at East St. Louis, contrary to the shipping instructions and under a new arrangement which entirely changed the billing for the subsequent transportation, it thereby participated in the conversion and became an insurer for the subsequent loss. [Weaver v. So. R. Co., 135 Mo. App. 210, 115 S. W. 500; Brown & Haywood Co. v. Penn. Co., 63 Minn. 546; 1 Hutchinson on Carriers (3 Ed.), sec. 130 and authorities supra.]

Though it does not appear by direct proof that the Louisville & Nashville Railroad Company had knowl-

edge of plaintiff's title, it may be inferred that it did, for there appears to have been negotiations pending during Friday, Saturday and Sunday between its agent and the Missouri, Kansas & Texas Railway Company's officers at St. Louis, to the end of having the shipper's order clause released, and the arrangement made with the Louisville & Nashville Railroad Company, whereby Coverdale released the stock shipment contract and signed McNulty's name to a new one over that road, was not made until Sunday evening. Whether the Louisville & Nashville Railroad Company had notice of plaintiff's title or not, it knew Coverdale was not the owner of the horses and he did not represent himself to be McNulty. For three days the parties sought to communicate with the owner and must have known Coverdale was without authority to release the shipper's order clause. Furthermore, nothing in proof suggests that he was the agent of either McNulty or plaintiff bank for the purpose of entering into a new contract, but, on the contrary, he was a mere attendant or care-taker of the horses. Besides, the stock shipment contract in his possession and which he surrendered to the Louisville & Nashville Railroad Company, according to the proof, revealed on its face that it was made "to the order of John McNulty, notify Citizens' Bank, Batesburg, South Carolina." Obviously it was from this that the Louisville & Nashville Railroad Company acquired its information suggesting the Citizens' Bank of Batesburg as the consignee under the new shipping contract which it issued in the name of McNulty and delivered to Coverdale. From these facts, it is clear that the Louisville & Nashville Railroad Company knew Coverdale was only an attendant, without authority to enter into a new contract in derogation of plaintiff's rights, and it may be inferred that it knew of the assignment of the bill of lading in the first instance to plaintiff and its further negotiation to the Citizens' Bank at Batesburg, for, under

the contract it made, the Citizens' Bank of Batesburg was mentioned as the consignee. In this view, it is obvious the Louisville & Nashville Railroad Company exercised an act of dominion over plaintiff's property inconsistent with and to the exclusion of its rights therein, when it assumed to change the contract of shipment from shipper's order, notify Citizens' Bank, Batesburg, directly to such bank as the consignee. [Weaver v. So. R. Co., 135 Mo. App. 210, 115 S. W. 500, and authorities supra.] Though the two defendants performed separate acts of dominion over the shipment inconsistent with, in derogation and to the exclusion of, plaintiff's right in the property at East St. Louis, it appears each participated and the several acts concurred in operating the identical tort of conversion. The matter of their joint liability should therefore have been referred to the jury and the court erred in directing a verdict to the contrary.

It is immaterial that plaintiff omitted to prove a demand was made on defendants before the suit was instituted. Where it appears the tort is affirmative in character, as here, and the conversion is operated through an abuse of the bailment, contrary to the terms and stipulations of the contract therefor, no demand is necessary. [2 Cooley on Torts (3 Ed.); 871. Though a party is legally possessed of goods, if he actually converts them, no demand is necessary before instituting a suit therefor. [Knipper v. Blumenthal, 107 Mo. 665, 18 S. W. 23; 28 Am. and Eng. Ency. Law (2 Ed.), 666; Wimberly v. Pitner, 66 Mo. App. 633; LaFayette County Bank v. Metcalf, 40 Mo. App. 494.] The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.