CHARLES W. AHMANN v. MARY E. SUMMERS KEMPER and JOHN W. KEMPER, Appellants.—119 S. W. (2d) 256.

Division Two, August 17, 1938.

*Joseph T. Tate, Clark, Boggs, Peterson & Becker* and *Howard B. Lang, Jr.*, for appellants.

946

*Claude R. Ball* and *David R. Hensley* for respondent.

BOHLING, C.—The principal contested issue is: Has the wife homestead rights in an estate by the entirety which she may assert subsequent to the death of her husband against an unsecured indebtedness of herself and husband incurred subsequent to the filing for record of the deed conveying said estate. Briefly of the facts.

Edwin J. Summers and Mary E. Summers were husband and wife. The record title to an eighty acre tract of land stood in the name of Mary E. and the record title to an abutting eighty stood in the names of Edwin J. and Mary E. as husband and wife, subject to a secured indebtedness of $2,200. Thereafter, on February 27, 1919, Edwin J. and Mary E. borrowed $2,200 from Charles W. Ahmann, executing their unsecured note therefor, and discharged the aforesaid secured indebtedness therewith. Edwin J., Mary E., and their minor son occupied the two eighties as the home place; and after the death of Edwin J. on April 21, 1923, Mary E. and the minor son continued to so occupy said farm. On January 15, 1935, Mary E. deeded to John W. Kemper the whole of said farm, the recited consideration being $1.00 and other considerations; and on January 24, 1935, John W. Kemper and Mary E. Summers were married.

Charles W. Ahmann, having acquired a deed to said farm at a sheriff's sale under special execution in connection with a judgment obtained July 2, 1935, against Mary E. Summers Kemper on the aforesaid $2,200 note, instituted this action against said Mary E. Summers Kemper and John W. Kemper, and the tenants on said farm, seeking, in the first count, a decree invalidating said deed from Mary E. Summers to John W. Kemper and the vesting of title in plaintiff, et cetera, and, in the second count, ejectment for possession, damages, rents and profits.

The judgment was to the effect that Mary E. possessed homestead rights in the eighty held in her own name, defeating any rights of plaintiff against said eighty and that the Summers-Kemper deed passed a good title to said eighty; but that the death of a husband cannot create a homestead in the widow in land held by the entirety; that upon Edwin J.'s death Mary E. had a greater estate than a homestead—the property became her absolute property: she became the sole owner—and as to the estate formerly held by the entirety Mary E. first acquired absolute title (and first acquired rights of homestead) upon the death of Edwin J., the husband, the head of the family, on April 21, 1923, long after she became indebted to plaintiff (February 27, 1919); and that as to the land formerly held by the entirety said Summers-Kemper deed was void as to plaintiff and title was divested out of John W. Kemper and vested in plaintiff. The judgment on the ejectment count went accordingly.

Defendants acquiesce in the court's finding that the Summers-Kem-

per deed was fraudulent as to plaintiff and that plaintiff is entitled to have the same declared ineffective unless it conveyed rights—grantor's homestead—beyond the reach of plaintiff. Plaintiff has not appealed and the correctness of the holding *nisi* as to the property held in the wife's name stands unquestioned. The litigants present no contest with reference to the rules of law that a homestead does not exist in land against a prior incurred indebtedness or that an existing homestead is unaffected by a subsequently incurred unsecured indebtedness; but they sharply contest the time when the widow acquires a homestead in an estate by the entirety—defendants asserting the homestead attaches upon the recording of the grant of the estate and plaintiff asserting the homestead first exists upon the death of the husband (housekeeper or head of the family). We limit the review to such of the presented issues as are deemed determinative of the appeal.

■ Speaking to the estate by the entirety, we can agree with the court *nisi* that the wife acquires no homestead rights by descent; that the death of the husband does not create homestead rights in the wife; and that upon the husband's death the wife has a greater estate than a homestead. But the wife has a greater estate in lands held by the entirety than a homestead prior to the death of the husband. The estate by the entirety in Missouri is the same as the common law estate by the entirety. [Otto F. Stiffel's Union Brewing Co. v. Saxy, 273 Mo. 159, 167, 201 S. W. 67, 70(8) ; Frost v. Frost, 200 Mo. 474, 483, 98 S. W. 527, 528; Bains v. Bullock, 129 Mo. 117, 119(I), 31 S. W. 342, 343(I).] "It has been held that the homestead and fee are no⁺ 'wo separable and divisible interests.' They must be kept toge ﹒﹒." [Armour v. Lewis, 252 Mo. 568, 579, 161 S. W. 251, 253(4).] Hɩ bа d and wife have unity of interest, unity of title, unity of time an un ɤ of possession in estates by the entirety. 2 Blackstone Comme, ,ar. s, 182 states: "And, therefore, if an estate in fee be given to a man and his wife, they are neither properly joint-tenants, nor tenants in common: for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seized of the entirety, *per tout, et non per my.* . . ." Warvelle in his work on Real Property (3 Ed.), section 111, uses the following language: "A conveyance to husband and wife, in the manner above indicated, does not constitute them either joint-tenants or tenants in common; for they are, in legal contemplation, but one person, and hence unable to take by moieties. . . . While the right of survivorship gives the estate an apparent resemblance to joint-tenancy, it yet differs materially from joint-tenancy, for the survivor succeeds to the whole not by the right of survivorship simply, as is the case with joint-tenants, but by virtue of the grant which vested the entire es-

tate in each grantee, or, in contemplation of law, in one person with a duel body and consciousness." Garner v. Jones, 52 Mo. 68, 71(1), states: "Being but one person in law, they took the estate as one person. Each being the owner of the entire estate; neither of whom had any separate or joint interest but a unity or entirety of the whole. So if either died the estate continued in the survivor, as it had existed before; an undivided unity or entirety. , . . The only change by death was in the person, not in the estate." The foregoing and other authorities are reviewed in the Brewing Company case, supra (273 Mo. l. c. 163, 201 S. W. l. c. 68), which states (l. c. 170 and 71, respectively): "On the death of one, the other continued to own the whole estate. There was no increase of the estate as in the case of the survivorship of a joint tenant." [See, also, Frost v. Frost, 200 Mo. 474, 483, 98 S. W. 527, 528.] In holding the wife, without joining the husband, may maintain ejectment for lands held by the entirety, Bains v. Bullock, 129 Mo. 117, 120, 31 S. W. 342, 343, uses the following language: "But it is also true that the grant vests in each grantee the entire estate. . . . Under the deeds to herself and husband, then, plaintiff holds the entire estate in the lands claimed."

So, if Mary E. possessed homestead rights in the eighty held in her own right (unquestioned here), she, under the authorities supra, possessed like homestead rights in the eighty held by the entirety. Prior to her husband's death she was no more a housekeeper or the head of a family with respect to the one than she was with respect to the other. Whatever estate she acquired was acquired under the grant, which, after the death of her husband continued in her as before.

Such liberal construction as falls within their words and spirit has been accorded the homestead laws for the protection from creditors of those within their beneficent purpose. [Balance v. Gordon, 247 Mo. 119, 124(a), 152 S. W. 358, 359(a); consult 14 West Missouri Digest, Homestead, Key No. 5.] The applicable statutory provisions are to the following effect: The homestead of every housekeeper or head of a family not exceeding one hundred sixty acres of land or the total value of $1500 is exempt from attachment and execution. [Sec. 608, R. S. 1929; Mo. Stat. Ann., p. 4221; Sec. 5435, R. S. 1889.] After constituting a married woman a *femme sole* for the purpose of transacting business of her own, Sec. 2998, R. S. 1929, Mo. Stat. Ann., p. 5055 (Sec. 6864, R. S. 1889) provides: ". . . A married woman may invoke all exemption and homestead laws now in force for the protection of personal and real property owned by the head of a family, except in cases where the husband has claimed such exemption and homestead rights for the protection of his own property." Homesteads may be acquired in land held in common [Clark

v. Thias, 173 Mo. 628, 649, 73 S. W. 616, 622], and a wife, in her own name, may claim a homestead in her separate property [Sharp v. Stewart, 185 Mo. 518, 528, 84 S. W. 963, 966; McClure v. Virden, 70 Fed. (2d) 724; and consult State ex rel. v. Oberheide (Mo. App.), 39 S. W. (2d) 395, 397(4)]. The instant record does not disclose that Edwin J. Summers ever claimed exemption and homestead rights. The right conferred upon a married woman by Section 2998 to invoke "all exemption and homestead laws" accrues in case of title by deed upon the filing of the deed for record (Sec. 615, R. S. 1929, Mo. Stat. Ann., p. 4234); subject, however, to be defeated, not because the wife has no occasion to and does not invoke this statutory right until after the death of the husband but, as provided by Section 2998, by the husband claiming such exemption and homestead rights for the protection of his own property, a contingency which never did and never can happen in the instant case.

■ But plaintiff contends the judgment *nisi* should be affirmed because John W. Kemper is liable for the antenuptial debts of his wife to the extent of the property acquired by him from her; citing Sec. 3004, R. S. 1929, Mo. Stat. Ann., p. 5073; Babb v. Bruere, 23 Mo. App. 604; Wisdom v. Newberry, 30 Mo. App. 241; Todd v. Works, 51 Mo. App. 267. Plaintiff refers us to his judgment of July 2, 1935. Without discussing the development or details of the law on the issue or the record in said case, the judgment therein, as disclosed by the instant record, was rendered upon an obligation of Mary E. Summers and was against Mary E. Summers Kemper in the sum of $2910. Although a judgment against a married woman [see Sec. 2998, supra], it does not purport to be a judgment establishing liability on the part of a husband for an antenuptial obligation of his wife. [Consult Gruen v. Bamberger, 11 Mo. App. 261, 263; Merrill v. St. Louis, 12 Mo. App. 466, 473(6); Babb v. Bruere, 23 Mo. App. 604, 611 (6); Walker v. Deaver, 79 Mo. 664, 681.] We rule the issue against plaintiff, without passing on the enforcibility of the antenuptial debts of Mrs. Kemper against Mr. Kemper.

Testimony placing a value on the one hundred sixty acres was variously put between $1,400 and $6,000.

Defendants say the judgment should be reversed with directions to enter judgment for defendants on each count. However, under the evidence, plaintiff may be able to protect the debt, and justice may be better served if the judgment be reversed and the cause be remanded with plaintiff permitted to proceed as he may be advised; otherwise judgment to be entered in conformity herewith. [Consult Rissell v. St. Louis-S. F. Ry. Co., 336 Mo. 845, 851, 81 S. W. (2d) 621, 624; Byrne v. Prudential Ins. Co. (Mo.), 88 S. W. (2d) 344, 347(4); Markley v. Kansas City So. Ry. Co., 338 Mo. 436, 446(5), 90 S. W.

(2d) 409, 414(10); Barlow v. Scott (Mo.), 85 S. W. (2d) 504, 518-(10); Lappin v. St. Louis Nat. L. B. C. (Mo. App.), 38 S. W. (2d) 1025, 1027(3); Argeropoulous v. Kansas City Rys. Co., 201 Mo. App. 287, 292, 212 S. W. 369, 372(2).] It is so ordered. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.