**Hazel M. SMITH, Plaintiff-Appellant,**

v.

**Raymond Carl SMITH, Defendant-Respondent.**

No. 7547.

Springfield Court of Appeals.

Missouri.

March 20, 1957.

See also 299 S.W.2d 32.

R. P. Smith, Cape Girardeau, for plaintiff-appellant.

A. M. Spradling, Jr., Strom & Spradling, Cape Girardeau, for defendant-respondent.

RUARK, Judge.

The court below sustained husband-defendant's motions to dismiss both counts of the wife-plaintiff's petition because of failure to state a claim upon which relief can be granted. Count I of the petition charged defendant without cause abandoned the plaintiff and did not thereafter contribute anything for her support and maintenance, by reason of which plaintiff was required to work and to expend her own funds for the necessities of life. The prayer was for recovery of money judgment in the sum of $1,875, the reasonable value and cost of such unprovided necessities so furnished by plaintiff. The question raised by the dismissal of Count I is: *Does an abandoned wife have a cause of action against her husband to recover money expended by her in procuring necessities for her support and maintenance?*

A husband is obliged by the common law to support his wife and minor children in accordance with his means, and this duty to supply necessities to the wife continues after a separation if such separation be the fault of the husband. Spencer, Law of Domestic Relations, ch. X, § 121, p. 111; 41 C.J.S., Husband and Wife, § 52, p. 516; Pfenninger v. Brevard, Mo.App., 129 S.W. 2d 924; Schulz v. Great Atlantic & Pacific Tea Co., 331 Mo. 616, 56 S.W.2d 126; see Dorrance v. Dorrance, 257 Mo. 317, 165 S. W. 783. And in the event the husband does not supply such necessities, one who has furnished them (except as a gratuity) may sue and recover the value thereof from the husband. Bishop on Marriage, Divorce and Separation, vol. 1, § 1215, p. 524; Spencer, Law of Domestic Relations, § 121, p. 111; Audrain County v. Muir, 297 Mo. 499, 249 S.W. 383; Pfenninger v. Brevard, supra, 129 S.W.2d 924. The weight of authority is that the *primary* duty to support rests on the husband (where the separation was the fault of the husband and not the fault of the wife), although the wife may have a separate estate of her own from which necessities may be supplied, or may be able to support herself. Actual *dependency* of the wife is not required to sustain the legal liability to support. 26 Am.Jur., Husband and Wife, § 360, p. 959; see 41 C.J.S., Husband and Wife, § 50a, p. 510, § 52c, p. 519;

annotation 101 A.L.R. p. 442. The Missouri decisions are to the same effect. Cotter v. Valentine Coal Co., 222 Mo.App. 1138, 14 S.W.2d 660; State ex rel. Valentine Coal Co. v. Trimble, 325 Mo. 277, 28 S.W.2d 1028; Caldwell v. J. A. Kreis & Sons, 227 Mo.App. 120, 50 S.W.2d 725; In re Hutcherson's Guardianship Estate, 239 Mo.App. 801, 199 S.W.2d 899; Reynolds v. Rice, 224 Mo.App. 972, 27 S.W.2d 1059; State ex rel. George v. Mitchell, Mo.App., 230 S.W 2d 116, 120(7); Boldwin v. Fowler, Mo. App., 217 S.W. 637, 638. Nor must the wife be without funds or property in order to successfully maintain a statutory action for separate maintenance. Woodman v. Woodman, Mo.App., 281 S.W.2d 555; Dietrich v. Dietrich, Mo.App., 209 S.W.2d 540, 545. This rule is not changed by the married women's acts. 26 Am.Jur., Husband and Wife, § 360, p. 959; In re Wood's Estate, 288 Mo. 588, 232 S.W. 671; Pfenninger v. Brevard, supra, 129 S.W.2d 924.

Under the English common law it was recognized that the obligation existed, but the wife, because of her disability, could not enforce it (although it was sometimes done vicariously); but since the married women's acts, which removed the disabilities of the wife, the weight of authority is that she may now maintain the action. Restatement, Restitution, § 76, illustration 5, p. 334; Madden on Domestic Relations, ch. 5, §§ 58–60; see 117 A.L.R. 1181; see 26 Am.Jur., Husband and Wife, § 343, p. 942; De Brauwere v. De Brauwere, 203 N.Y. 460, 96 N.E. 722, 38 L.R.A.,N.S., 508; Spalding v. Spalding, 361 Ill. 387, 198 N.E. 136, 631, 101 A.L.R. 433, 437; Bohun v. Kinasz, 124 Conn. 543, 200 A. 1015; Cantiello v. Cantiello, 136 Conn. 685, 74 A.2d 199; Gessler v. Gessler, 181 Pa.Super. 357, 124 A.2d 502; Adler v. Adler, 171 Pa.Super. 508, 90 A.2d 389; see Sodowsky v. Sodowsky, 51 Okl. 689, 152 P. 390. The leading and most often cited case is De Brauwere v. De Brauwere, supra, 203 N.Y. 460, 96 N.E. 723, 38 L.R.A.,N.S., 512, wherein the court, after discussing the theory of subrogation of the wife to the rights of third persons who furnished the necessaries, stated:

"We prefer to place his liability on a different ground. The husband was unquestionably under a legal obligation to provide his wife and children with the necessaries of life suitable to their condition. This liability would have been enforceable by the wife in her own behalf and in behalf of her infant children, were it not for her disability at common law to sue her husband. That disability having been removed, a wife who has applied her separate estate to the purpose of an obligation resting primarily upon her husband may now recover from him the reasonable amounts which she has thus expended out of her separate estate in discharge of his obligation. In other words, under the common law such a claim as that in suit was not enforceable, because a married woman was incapable of owning any separate estate and likewise incapable of maintaining an action at law against her husband. These obstacles have been removed by placing a married woman on the same footing with a woman who is unmarried in respect to her property rights, and by permitting her to enforce such rights in the courts against her husband no less than against strangers."

In Adler v. Adler, supra, 90 A.2d loc. cit. 390, the court said:

"Where, as here, a deserted wife has used or applied her own separate estate in the discharge of an obligation resting primarily on the husband, the law imposes a quasi contractual relationship to reimburse the deserted wife for expenditures which she had expended from her separate estate in providing herself with support in a manner in keeping with his financial circumstances and earning power."

We find no case in Missouri which directly passes upon this question.[1] However, in In re Hutcherson's Guardianship Estate, supra, 199 S.W.2d 899, the then guardian of an insane woman was permitted to surcharge the settlement of her husband and ex-guardian, who had charged expenses for her support in an asylum against the wife's separate estate.

■ Our statute, § 452.130, which provides for an action for separate maintenance, is not antagonistic to the right of the abandoned wife to secure reimbursement for her support, but is a legislative adoption or recognition of the equity jurisdiction of the court to award the wife separate maintenance out of her husband's estate. Behrle v. Behrle, 120 Mo.App. 677, 97 S.W. 1005, 1006; Hoynes v. Hoynes, Mo. App., 218 S.W.2d 823, 827; Meredith v. Meredith, Mo.App., 151 S.W.2d 536.

■ Somewhat analogous is the treatment by the courts of the situation where the mother sues the father for reimbursement of expenditures which she has made for the support of the children. It is held that the wife may maintain the action, that the remedy by independent suit and the remedy provided by statute are different and coterminous, the one looking to the future, while the other looks to the past. Kelly v. Kelly, 329 Mo. 992, 47 S.W.2d 762, 81 A.L.R. 875; Lodahl v. Papenberg, Mo. Sup., 277 S.W.2d 548; Broemmer v. Broemmer, Mo.App., 219 S.W.2d 300, 304; Gallion v. McIntosh, Mo.App., 8 S.W.2d 1076; Davis v. Gould, 234 Mo.App. 42, 131 S.W. 2d 360; Berkley v. Berkley, Mo.Sup., 246 S.W.2d 804, 34 A.L.R.2d 1456; see, in respect to alimony, Swenson v. Swenson, Mo. App., 227 S.W.2d 103, 105, 20 A.L.R.2d 1409. In Kelly v. Kelly, supra, 47 S.W.2d 762, the court referred to the contention (which it was claimed had been decided in Laumeier v. Laumeier, 308 Mo. 201, 271 S.W. 481) that the remedy given by statute to make alterations as to alimony and maintenance was preclusive of other remedies touching such matters. After referring to the statutes, the court said, 47 S.W. 2d loc. cit. 765:

"The more ancient remedy, however, and one which exists independent of any statute, is the common-law action by which the devorced wife, the same as any other person who has, on the father's neglect or refusal to do so, supported the children, may recover from such father the amount so expended."

And again at loc. cit. 767:

"The remedy by proceeding in the divorce case and court by motion or otherwise looks to the future support of the child, while the common-law independent action deals with the support already furnished and to recover for expenses already incurred. The two remedies are coterminous rather than concurrent, and the one begins where the other ends. It is not a choice between remedies but a use of the remedy suitable to the facts."

In Lodahl v. Papenberg, supra, 277 S.W.2d 548, loc. cit. 551, the court said:

"[T]he apparent purpose of the statute is to provide a mode of procedure for obtaining maintenance of the child and for determining in advance the extent of the common-law obligation of the father, as well as to provide the means of enforcing the obligation."

And again:

"One remedy is a proceeding in the divorce case, by motion or otherwise, to obtain an order providing for *future* support; and the other is by independ-

---

1. Although we do find unsupported dictum in Dorrance v. Dorrance, 257 Mo. 317, 165 S.W. 783 (where the court had of its own motion rendered judgment for a flat sum representing maintenance from date of commencement of the suit to date of decree), to the effect that the action for support would have been unavailing if it had not been preceded by, or made a part of, the suit for maintenance.

ent common-law action to recover for the expenses *already incurred."*

Now since the disabilities of the wife have been removed, and she can sue her husband (see infra), we see no reason why the wife may not now maintain the action, nor do we see any reason why the statutory action for maintenance in the future would preclude it. This seems to be the conclusion of the majority of authority (see supra).[2]

■ Returning to Count I of the petition; while we do not recommend it as a model, and while it was no doubt subject to motion to make more definite and perhaps other motions as well, by giving the language the benefit of every reasonable intendment we think it does set forth in substance (a) the marriage of the parties, (b) the abandonment by the husband without fault of the wife, (c) the ability of the husband to provide, (d) the failure to provide, (e) the necessities of the wife, (f) her expenditures to provide the necessities and (g) the value thereof. For such reason we believe it was error to sustain defendant's motion to dismiss Count I for failure to state a claim for which relief could be granted.

■ Count II of plaintiff's petition, after reaffirming the allegations of Count I in reference to marriage and residence of the parties, charged that the defendant wrongfully removed from plaintiff's home, secreted, converted to his own use and sold certain household effects, a portion of the property so converted being plaintiff's own personal property and a portion of it being the joint property of the parties. The question is: *Can a wife, living separate from her husband, maintain an action against him for conversion of personal property?*

We consider that portion of the petition which deals with conversion of plaintiff's separate property. It is the position of the respondent that the trial court was correct in its ruling because a married woman cannot sue her husband in tort.

Commencing prior to Alt v. Meyer, 8 Mo.App. 198 (which is of historical interest because it involves the construction of the statutes of 1875), wherein it was held that the conferring of property rights on married women implied the right to sue at law for its conversion;

And through Beagles v. Beagles, 95 Mo. App. 338, 68 S.W. 758, loc. cit. 760, in which it was said:

"The main idea of the law was to secure to the wife the full enjoyment of her separate property as against the ancient common-law claims of her husband and of his creditors. Incident to that enjoyment must be her right to use the ordinary and usual remedies provided by law to protect it, unless the legislature has otherwise ordained. Instead of otherwise ordaining, the legislature has taken pains to declare that a married woman, without joining her husband as a party, may sue or be sued in her own name 'as if she was a feme sole'; that is to say, as if she was an unmarried woman. * * * The statutes declare that she has the status of an unmarried woman as to such property (Rev.St.1899, § 4335 [Section 451.290 RSMo 1949, V.A.M.S.]), and as to her right to sue concerning it (Id. § 546 [Section 507.010 RSMo 1949, V.A.M.S.]). The courts should give effect to the spirit of those statutes."

and wherein the court refers with approval to Smith v. Smith, 20 R.I. 556, 40 A. 417,

2. To the contrary seems to be Gonzales v. Gonzales, Tex.Com.App., 117 Tex. 183, 300 S.W. 20, and Martin v. Martin, Tex. Com.App., 17 S.W.2d 789, 792, and cases following them. A justiciable common law right of the wife is recognized, but it is said that a wife cannot maintain a suit against her husband to com-

pel support. A statute specifically made the wife the agent of the husband to pledge his credit and subject his property for necessities, and it is held that the rights given by the statutes were intended to be exclusive so as to preclude the common law action.

which held that an action. of trover by a wife against her husband for his conversion of her property was maintainable;

Continuing through Shewalter v. Wood, Mo.App., 183 S.W. 1127, loc. cit. 1129, wherein the court said:

"As to the second count it is enough to say that, if the destruction of the manuscripts occurred before the divorce, this would not preclude a recovery by plaintiff. A husband cannot maintain an action against his wife for negligence in the care or disposal of his property, *but either may sue the other in replevin or conversion, or for the willful and malicious destruction of the separate property of the plaintiff spouse.*" (Emphasis ours.)

And through Ex parte Badger, 286 Mo. 139, 226 S.W. 936, loc. cit. 938, 14 A.L.R. 286, wherein it was said:

"From all of which it follows that a wife may as a feme sole sue her husband as she may others in law as well as in equity, except that she cannot maintain an action for a personal tort against him."

And continuing through Rudd v. Rudd, 318 Mo. 935, 2 S.W.2d 585–586:

"Under our statute (sections 7323–7328, R.S.1919 [Sections 451.250, 451.-260, 451.290, 452.170, 452.180, 452.250 RSMo 1949, V.A.M.S.]), a married woman's legal status is that of a feme sole, so far as to enable her to transact her own business and to contract and be contracted with in regard to her own property, personal or real. This right is not limited to actions against third persons, but permits a man and his wife to contract with each other or to sue and be sued by each other."

And to Hamilton v. Fulkerson, Mo.Sup., 285 S.W.2d 642, 645, which holds that a wife can sue her husband for antenuptial tort and, referring to § 451.250 RSMo 1949, V.A.M.S., emphasizes that the statute provides that in respect to her separate property and under her sole control she may maintain *any action* for the recovery of that personal property; and refers with approval to the statement in Claxton v. Pool, Mo.Sup., 197 S.W. 349, L.R.A.1918A, 512, with emphasis upon the words *"'[w]ithout a specific statutory enactment to that effect, she is recognized as being likewise emancipated,* by the spirit and general trend of legislation'"; and which Hamilton case also calls attention to and discusses the significance of the merger of § *855, Laws of 1939, in the new § 11 of the 1943 Laws, which is now § 507.010.* See historical note, § 507.010, 29 V.A.M.S.

It is now apparent that by legislative revolution and judicial evolution a wife is completely emancipated from domestic and economic vassalage in so far as her separate property is concerned.

■ True, it is held that a wife may not sue her husband for a tort which involves an injury to her person or reputation. Rogers v. Rogers, 265 Mo. 200, 177 S.W. 382; Mullally v. Langenberg Bros. Grain Co., 339 Mo. 582, 98 S.W.2d 645, 646; Rosenblum v. Rosenblum, 231 Mo.App. 276, 96 S.W.2d 1082, 1083; Willott v. Willott, 333 Mo. 896, 62 S.W.2d 1084, 89 A.L.R. 114; see Rice v. Gray, 225 Mo.App. 890, 34 S.W. 2d 567, 568. What the courts would say about this if presented with the question afresh is not before us. But we have found no case in this state decided since the married women's acts which holds that the wife may not bring an action against her husband which (as distinguished from a tort involving an injury to her person) involves the direct or indirect protection of her separate property.

■ "Property torts" embrace injury or damage to property, real or personal. "Personal torts" involve injuries to the person, reputation, feelings or body. See Words and Phrases, vol. 32, "Personal Tort," p. 574. Conversion of personal property (trover) is usually referred to as a tort against personal property. See

Words and Phrases, Conversion, p. 537; Kegan v. Park Bank, 320 Mo. 623, 8 S.W. 2d 858, 871; St. Louis Fixture & Show Case Co. v. F. W. Woolworth Co., 232 Mo.App. 10, 88 S.W.2d 254, 263.

At common law redress for an act of conversion was trover, which counted upon the real or supposed fact that the plaintiff casually lost his goods and the defendant found and appropriated them. It was said that if the property was taken by trespass it was the privilege of the plaintiff to waive the trespass and sue either to recover back the specific property by replevin or its value at the time of the conversion in trover. Cooley on Torts, 3rd ed., vol. II, pp. 846–847. Thus while the action is called one in tort, its main purpose is to recover the value in money to replace the misappropriated property.

Sec. 451.290 RSMo 1949, V.A.M.S., makes a married woman a feme sole so far as to enable her to carry on business and to sue and be sued at law or in equity. Sec. 451.250 makes the woman the master of her own separate property unless it is reduced to the husband's possession by her written consent. She may sue in her own name for the recovery of this property; and we think it was the legislative intention, following the general trend, to permit her to sue for the recovery not only of the specific items, but, if they were misappropriated and converted, then for their replacement in money by an action in conversion. In Cooley on Torts, 3d Ed., vol. I, p. 474, it is said:

"For a personal tort by the husband to her person or reputation, the wife can sustain no action, and she must rely upon the criminal laws for her protection, or seek relief in separation or in proceedings for a divorce. But where, by statute, the wife is given full dominion and control of the property purchased or otherwise acquired by her, the marital relation would not protect the husband against an action for any unlawful interference with the property."

To the same effect in regard to torts against property are Prosser on Torts, 2d Ed., ch. 22, § 101, p. 672, and Spencer, Law of Domestic Relations, ch. XI, § 131, p. 124. The author Schouler (Marriage, Divorce, Separation and Domestic Relations, 6th Ed., vol. I, § 642, p. 675) flatly interprets the Missouri law as allowing an action in conversion to both the husband and wife.

We hold that the dismissal of Count II for failure to state a claim was error because the plaintiff stated a claim for conversion of her separate property.

We remark, however, that we have grave doubt whether, under the present controlling decisions in this state, the plaintiff could sue and recover for the personal annoyance and harassment which her petition claims was *the purpose* of the alleged conversion. The injury, if any, occasioned by such alleged harassment would be to plaintiff's feelings, hence tending into the field of personal torts. In passing on the motion we have treated such allegations as surplusage.

We further observe that there is considerable question as to that part of the claim which alleges conversion of the joint household property of the husband and wife. Aside from any consideration of public policy, there is the question whether the estate held by the parties would permit it. When title to personal property is taken jointly by the husband and wife, it will vest as an estate by the entirety unless a contrary intent and purpose plainly appears.[3] There is no allegation in the petition which would indicate that the joint property was vested other than in the usual manner. The estate by entirety so referred to still exists and is not destroyed or lessened by the Missouri statutes. All the

3. Wilson v. Frost, 186 Mo. 311, 85 S.W. 375; Feltz v. Pavlik, Mo.App., 257 S.W. 2d 214; see 41 C.J.S., Husband and Wife, § 35b, p. 479.

common law incidents remain.[4] These incidents are unity in all things for so long as the marriage remains undissolved. There is only one moiety and each (both husband and wife) owns all of it, per tout et non per my.[5] The charge of conversion is premised upon the assumption that a person wrongfully, that is, without right, asserts incidents of ownership over property which is not his.[6] Under the fictional entirety estate, the husband owned and was entitled to possession of the very thing which he is charged with taking.

The judgment is reversed and remanded for further proceedings.

McDOWELL, P. J., and STONE, J., concur.

---

4. Craig v. Bradley, 153 Mo.App. 586, 134 S.W. 1081; Cullum v. Rice, 236 Mo. App. 1113, 162 S.W.2d 342; Schwind v. O'Halloran, 346 Mo. 486, 142 S.W.2d 55; Ashbaugh v. Ashbaugh, 273 Mo. 353, 201 S.W. 72.

5. Stewart v. Shelton, 356 Mo. 258, 201 S.W.2d 395, 398; Ahmann v. Kemper, 342 Mo. 944, 119 S.W.2d 256; Linders v. Linders, 356 Mo. 852, 204 S.W.2d 229.

6. Blum v. Frost, 234 Mo.App. 695, 116 S. W.2d 541, 546; People's State Savings Bank v. Missouri, K. & T. Ry. Co., 158 Mo.App. 519, 138 S.W. 915, 917.