**J. Byron DeLISLE and Madelon DeLisle, Plaintiffs-Respondents,**

v.

**CAPE MUTUAL INSURANCE COMPANY, Defendant-Appellant.**

No. 13314.

Missouri Court of Appeals,
Southern District,
Division Three.

July 12, 1984.

Motion for Rehearing or Transfer Denied
Aug. 3, 1984.

Albert C. Lowes, Catherine R. McBride, Buerkle, Lowes, Beeson & Ludwig, Jackson, for defendant-appellant.

James E. Reeves, Caruthersville, for plaintiffs-respondents.

MAUS, Judge.

By his petition J. Byron DeLisle, the named insured, sought to recover upon a policy of fire insurance issued by defendant Cape Mutual Insurance Company. The in-

sured real property was a home in Portageville owned and occupied by J. Byron DeLisle and Madelon DeLisle, his wife. In response to the defendant's objection to the interest and capacity of J. Byron DeLisle, Madelon DeLisle was added as a party plaintiff.

The defendant admitted the policy was in force and the insured property was damaged by a fire. It denied the insured's compliance with the policy and disputed the extent of the loss. The defendant also alleged seven additional defenses. These included misrepresentation of prior fire losses in the application for insurance and the defense of arson. After a two-day jury waived trial, the court made extensive findings of fact and conclusions of law. Those findings and conclusions determined the issues in favor of the plaintiffs. Judgment was entered awarding them a total of $52,-014.58, plus interest at the rate of 9 percent from June 21, 1982. A brief outline of the evidence is sufficient for consideration of the defendant's ten points on appeal.

A fire occurred in the insured home at approximately 12:00 noon on January 25, 1982. DeLisle was at his laundromat. Mrs. DeLisle was visiting a friend. After doing considerable damage to the home and its contents, the fire was extinguished by the local volunteer fire department. The fire was reported to the defendant that day. Its managing officer immediately employed a firm specializing in the investigation of arson to investigate the loss. One of the two employees of that firm inspected the scene the next morning. He took samples of charred material from the kitchen floor, a baseboard and a stairway. He made no subsequent investigation at the scene. No member of the volunteer fire department was contacted until a few weeks before trial.

The defendant presented the opinion of the investigator the fire was an intentional fire. He based that conclusion upon ruling out "natural causes," the areas of heavy burning, the pattern of the burning and his judgment there were two areas where the fire could have originated. However, he later stated that he found a burner on the electric stove in the "on" position. He concluded the burner had heated up grease in a pan that caught fire.

The samples of charred material were sent to a laboratory in North Carolina for analysis. That laboratory found two of the three samples had traces of automotive gasoline. The defendant also emphasized the financial difficulties of the DeLisles.

On the other hand, the plaintiffs developed the circumstances of the defendant's losses in two of the three preceding years, its reorganization and its recent employment of a new managing officer to improve the profitability of the company. Their cross-examination developed the availability of local analysis laboratories. Emphasized was the fact that the North Carolina laboratory, in examining approximately 50 samples submitted to it by the investigator, found accelerants in 70 to 80 percent of those samples. The plaintiffs also presented the testimony of two of the firemen, each of whom had over 30 years of experience. These firemen saw no evidence of gasoline, no suspicious burn pattern, no sign of an explosion and no indication of an intentional fire. The fire chief upon entry carefully checked the electric stove and found all burners in the "off" position. There was evidence the property was substantially under insured. The plaintiffs denied the charge of arson.

The trial court found the conclusion of the laboratory to be speculative. It expressly found the testimony of the arson investigator was not credible. It concluded the defendant failed to produce any credible evidence the fire was of incendiary origin. Evidence supporting the position of the plaintiffs was found to be credible and probative. The trial court determined that no arson had been committed.

The defendant's first point is based upon alleged misrepresentations in DeLisle's applications for insurance. There was evidence the plaintiffs had suffered the following fire losses. In 1971 their summer home or cabin at Reelfoot Lake burned and they were paid $12,000. In 1973 there was

a grease fire in their home for which they were paid $677.80. In 1976 their Door-III dress shop was damaged by fire and they were paid approximately $26,000. DeLisle's initial application for insurance dated March 13, 1976 disclosed a 1972 minor smoke ($300) loss. It was conceded this referred to the grease fire. The renewal application dated April 5, 1979 reported a "1977 fire $1800 or thereabout." This referred to the fire at Door-III. Neither application made reference to the Reelfoot Lake fire.

The defendant insists these facts establish as a matter of law a misrepresentation rendering the policy voidable. By failing to refer to portions of the evidence in its brief, the defendant emphasizes facts the plaintiffs argue are pertinent. DeLisle testified that when the defendant's agent prepared the applications, the agent asked him no questions. When the applications were completed, they were presented to DeLisle who signed them without reading them. This agent did not dispute this testimony. The plaintiffs also argue that as a matter of common knowledge in the small community, the agent knew or should have known of the Reelfoot Lake fire. There was evidence the defendant had independent knowledge of the Door-III fire. It paid the plaintiffs its maximum for off the premises personal property liability, which was $2050, 10% of the policy limit.

The resolution of this point requires the observance of only the basic rules concerning statements and omissions in applications for insurance. The policy provides, "The entire policy shall be void if, whether before or after a loss, the insured had wilfully concealed or misrepresented any material fact or circumstance concerning this insurance ...." The statements or omissions in the applications were not incorporated into the policy or otherwise made warranties. *Miller v. Plains Insurance Company*, 409 S.W.2d 770 (Mo.App. 1966). In *Miller* a similar policy provision was held to cause the policy to be subject to the rules otherwise applicable to representations.

It is not necessary to consider all of those rules. For example, it is not necessary to review the cases that hold an applicant is conclusively bound by an application which he signed but did not read. See *Cohen v. Metropolitan Life Insurance Company*, 444 S.W.2d 498 (Mo.App.1969); *Miller v. Plains Insurance Company*, supra; *Bearden v. Countryside Casualty Company*, 352 S.W.2d 701 (Mo.App.1961). But see *Farmers Mutual Fire & Lightning Ass'n v. La Vallee*, 501 S.W.2d 69 (Mo.App.1973). Cf. *Hay v. Utica Mut. Ins. Co.*, 551 S.W.2d 954 (Mo.App.1977).

The plaintiffs contend the policy is not voidable because the misrepresentation was not made with the intent to deceive. They cite quotations such as "[b]ut where there is no such warranty or provision in the policy a misrepresentation, in order to avoid the policy must have been fraudulently made." *Dixon v. Business Men's Assurance Co. of America*, 365 Mo. 580, 285 S.W.2d 619, 625 (banc 1955). They also cite *Pittman v. West American Insurance Company*, 299 F.2d 405 (8th Cir.1962); *Grand Lodge, U.B. of F., Etc. v. Massachusetts B. & Ins. Co.*, 324 Mo. 938, 25 S.W.2d 783 (banc 1930); *Pacific Mut. Life Ins. Co. v. Glaser*, 245 Mo. 377, 150 S.W. 549 (1912). On the other hand, the defendant contends the policy is voidable "whether such misrepresentation be made intentionally or through mistake and in good faith." *Minich v. M.F.A. Mutual Insurance Co.*, 325 S.W.2d 56, 57 (Mo.App.1959). "The law in Missouri is that a material misrepresentation in an application for insurance is a valid ground for avoiding the policy, even though the misrepresentation is innocently or inadvertently made." *American Fire and Indemnity Company v. Lancaster*, 415 F.2d 1145, 1147 (8th Cir. 1969). Also see *Cohen v. Metropolitan Life Insurance Company*, supra. It is not necessary to resolve this conflict.

It is clear a misrepresentation will render the policy voidable only if it was material to its issuance. "The fact that there were misrepresentations are not sufficient alone to void the policy. A repre-

sentation in an application for insurance, which is not in the form of a warranty or incorporated in the policy itself, must not only be false, but also material to the risk in order for the insurer to avoid its policy." *Haynes v. Mo. Prop. Ins. Placement Facility*, 641 S.W.2d 497, 499 (Mo.App.1982).

The test for determining the materiality of a misrepresentation has received divers expressions. "A representation made to an insurer that is material to its determination as to what premium to fix or to whether it will accept the risk, relates to a fact actually material to the risk which the insurer is asked to assume." *Weekly v. Missouri Property Ins. Placement*, 538 S.W.2d 375, 378 (Mo.App.1976). Also see *United States v. Home Life Ins. Co.*, 508 F.Supp. 559 (E.D.Mo.1980); *Pacific Mut. Life Ins. Co. v. Glaser*, supra. "Thus, whether a misrepresentation is material in an application for an automobile insurance policy, is determined by whether the fact, if stated truthfully, might reasonably have influenced the insurance company to accept or reject the risk or to have charged a different premium, and not whether the insurer was actually influenced." *Miller v. Plains Insurance Company*, supra, at 774. Also see *Haynes v. Mo. Prop. Ins. Placement Facility*, supra; 7 Couch on Insurance 2d § 35:81 (1961); 12A Appleman Insurance Law and Practice § 7294 (1981). It is uniformly held the burden is upon the insurer to establish its right to avoid the policy. *Haynes v. Mo. Prop. Ins. Placement Facility*, supra.

■ Although requested to do so, the defendant could produce no policy application on which it declined insurance solely upon the basis of previous fire losses. The principal evidence on that issue was the testimony of the defendant's former managing officer. The part of that testimony most favorable to the defendant is the following:

> [I]f we were asked by an agent to accept business from an individual who had had previous losses with fire, if they were sizeable losses or if it were a number of small losses, I'd say we, in that case we would of said don't submit the business to us, because we did not, we did not have personnel, we did not have the procedure where we could, where we could spend a lot of time of investigating if we had one loss or two losses, of, of finding out anything about 'em, so, in those cases we would just, normally we would just ask not to be put on the risk.

Later he answered "I would say that probably a loss, a single loss that occurred eight or ten years prior to the receipt of the application would not trigger the response that one would within the past three or four or five." At the time the renewal policy was issued the defendant had knowledge of the grease fire and the Door-III fire. There is no evidence knowledge of the Reelfoot Lake fire eight years prior would have reasonably influenced an insurance company to reject the risk or charge a different premium. Regardless, of the test adopted, the evidence is not such as to cause the trial court's finding that the defendant did not establish the materiality of the omission to be erroneous. *Haynes v. Mo. Prop. Ins. Placement Facility*, supra. The point is denied.

The trial court also found the defendant waived the defense of misrepresentation by retaining premiums contrary to the doctrine set forth in cases such as *Morrison v. Fidelity-Phenix Fire Ins. Co.*, 71 S.W.2d 816 (Mo.App.1934). It also found the defendant waived the defense of arson by conduct within the scope of cases such as *Garvin v. Union Mut. Life Ins. Co.*, 231 Mo.App. 904, 79 S.W.2d 496 (1935). The defendant argues that it is organized under §§ 380.479 to 380.860. The defendant's second point is that these findings of waiver are contrary to the non-waiver of defense statute, § 380.830. The plaintiffs argue the defendant did not prove such status. They also contend the latter statute does not bar such waivers citing *Bauldin v. Barton County Mut. Ins. Co.*, 606 S.W.2d 444 (Mo.App.1980); *Gabriel v. Farmers Mut. Fire Ins. Co.*, 108 S.W.2d 628 (Mo.App.1937) and *Everett v. Patrons' & Farmers' Mut. Fire Ins. Co.*, 222 Mo.

App. 1010, 7 S.W.2d 463 (1928). These issues need not be decided as the trial court found there was no arson and the misrepresentation was not established to be material.

■ As stated, the trial court found the evidence of the North Carolina laboratory (Dr. Jimmy Ming Pau) was speculative and "further weakened by his admission that the presence of gasoline in the minute quantity which he claimed to have found by his testing could have been the result of a person tracking gasoline into plaintiffs' home." The defendant contends this was error because there was no evidence any gasoline had been tracked into the plaintiffs' home. The defendant misconstrues the observation of the court. The court did not find gasoline had been tracked into the home. The reference was made to emphasize the minute quantity of gasoline which the laboratory tests allegedly revealed in the samples of charred material. There was no error in so doing. See *Brassfield v. Allwood*, 557 S.W.2d 674 (Mo.App.1977).

■ Also as stated, the trial court found the testimony of the arson investigator was not credible. Among the several bases assigned for this determination was the fact the investigator lived next door to the Regional Fire Marshall and did not mention to him any facts pertaining to the plaintiffs' fire. The defendant contends this is error because § 379.178 does not apply to a farmers mutual insurance company. Section 379.178 pertains to reports to the prosecuting attorney. The court did not refer to the investigator's failure as a violation of the statute. It was apparently considered to be contrary to the normal behavior that might be expected. The findings of the court included sufficient additional bases to support the court's determination of incredibility and there was no error. See *Brassfield v. Allwood*, supra.

The defendant's fifth point reads as follows:

The trial court erred in allowing the plaintiff to join Madelon DeLisle as a party plaintiff on the morning of trial because the Statute of Limitations had run on her claim in that Section 380.840, RSMo, 1978, requires that a suit be brought on a policy of farmers mutual insurance, if at all, within one year of the loss and though advised of the failure to join Madelon DeLisle, plaintiffs never attempted to do so until after the expiration of the one year and therefore, the court's ruling allowing her to be joined as a party plaintiff was erroneous and detrimental to the defendant; further, the joinder was improper and erroneous because Madelon DeLisle was not a proper party plaintiff in that this is an action on a contract of insurance and Madelon DeLisle was not a party to that contract and therefore had no standing to bring suit against the defendant.

At the conclusion of its argument under that point the defendant asks this court to "reverse the decision of the trial court and enter judgment in favor of appellant on all issues."

■ In its answer the defendant alleged that Madelon DeLisle was a necessary and indispensable party and required to be joined pursuant to Supreme Court Rule 52.-05. When she was added as a party plaintiff in response to this allegation, the defendant made no objection. "This being the case, appellants are precluded from charging that the trial court erred 'by including [Madelon DeLisle] as [a] part[y]'." *Estate of DeGraff*, 560 S.W.2d 342, 346 (Mo.App.1977). This should foreclose further consideration of this point.

However, assuming the action of the trial court was erroneous, that error would not call for the relief sought. A judgment should be reversed only when prejudicial to the complaining party. *Wilcox v. St. Louis-Southwestern Railroad Company*, 418 S.W.2d 15 (Mo.1967).

The judgment is prejudicial to the defendant only if the right of recovery of the named insured, J. Byron DeLisle, as one tenant by the entirety is limited to one-half the loss. At one point in its argument, the defendant so contends. The question has received the following comment:

Thus, it is held that the proprietary interest of a husband in real property of which he and his wife were seised as tenants by the entirety was an inseparable part of the single-entity title held in unity by him and his wife, and his insurable interest ran to the whole of the property and covered the entire estate, so that a fire policy naming the husband as the only insured inured to the benefit of the entire estate as owned by both husband and wife. 5 Couch on Insurance 2d § 29:10 (1960).

Research reveals no case in this state in which the question has been squarely and authoritatively answered. The two issues of an insurable interest and the extent of the right of recovery of one not an owner in fee are incisively isolated and discussed in *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700 (Mo. banc 1984). However, that case was based upon the valued policy statute. § 379.140.

■ Contrary to the defendant's contention when a husband conveys an undivided one-half interest to his wife the estate created is not essentially a tenancy by the entirety. *La Font v. Home Insurance Co.*, 193 Mo.App. 543, 182 S.W. 1029 (1916) is not applicable. It is established that tenants by the entirety do not hold undivided interests, "but both are seized of the entirety, per tout, et non per my." *Ahmann v. Kemper*, 342 Mo. 944, 119 S.W.2d 256, 257 (1938). Also see *Stewart v. Shelton*, 356 Mo. 258, 201 S.W.2d 395 (1947). It is also established J. Byron DeLisle had an insurable interest. *O'Donnell v. M.F.A. Insurance Co.*, 671 S.W.2d 302 (Mo.App. 1984). That insurable interest has been declared to extend to the whole premises. *Lux v. Milwaukee Mechanics' Ins. Co.*, 30 S.W.2d 1090 (Mo.App.1930).

Accepting the defendant's argument the wife had no right of recovery, the contention the husband's right of recovery is limited to one-half does not establish the court erred in adding the wife. That contention is not encompassed in the defendant's fifth point as stated. Nor would it be a basis for the relief sought by that point. The omission of that contention from the point is more than the omission of a "wherein and why" as required by Rule 84.04(d). It is the omission of a separate contention.

■ "Contentions not presented in the points to be argued in an appellate brief are abandoned and will not be considered.... A point is not properly presented for review if it is advanced for the first time in the argument portion of the brief." *Hastings v. Coppage*, 411 S.W.2d 232, 235 (Mo.1967) (citations omitted). Or, stated another way, "[a]ppellate review is limited to those issues presented in defendants' points and they alone need be and are considered." *Smith v. Welch*, 611 S.W.2d 398, 399 (Mo.App.1981). The observance of this rule is of importance. "The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts." *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978). The fifth point requires no further consideration.

■ The defendant's next two points concern the award of $26,264.58 for damage to the home. As the defendant contends, the basic measure of damages is the difference in value before and the value after the fire. However, if the cost of repair is less than the difference in value, the cost to repair is the measure. *Casada v. Hamby Excavating Co., Inc.*, 575 S.W.2d 851 (Mo.App.1978); *DeArmon v. City of St. Louis*, 525 S.W.2d 795 (Mo.App.1975); *Kirst v. Clarkson Construction Company*, 395 S.W.2d 487 (Mo.App.1965).

The defendant first seeks reversal because there was no evidence of the value of the home before and after the fire. This argument ignores the evidence. The plaintiffs' expert testified the value before the fire was $57,360 and the value after the fire was $17,360. This expert also testified the cost of repair was $40,000. The defendant's expert testified the cost of repair was $19,832.02. However, this expert admitted additional damages might be uncovered when repairs were commenced. His

figure did not include cleaning and deodorizing costs of $1,264.56.

■ The trial court found the testimony of the defendant's expert to be the most credible in respect to the estimate of the cost of repair. On this basis, the defendant argues there was no evidence to support an additional award of $7,232.56. The defendant misconstrues the findings and action of the trial court. It is obvious the judgment is an award of $25,000, plus the omitted cost of $1,264.56 for cleaning and deodorizing. The $25,000 figure is a compromise between the two estimates shaded toward the smaller estimate. It no doubt appropriately made allowance for undiscovered, needed repairs. The award is within the range of the evidence and is not excessive. *Casada v. Hamby Excavating Co., Inc.,* supra; *DeArmon v. City of St. Louis,* supra. These two points are denied.

■ The defendant propounded the following interrogatory to J. Byron DeLisle:

4. Please give the names, addresses, occupations, and job titles, if known, of all persons known to you or your attorneys who have any knowledge relating in any manner to the claimed fire that occurred on or about January 25, 1982, or any matters before or since relating in any manner to value, knowledge of the fire, income, any losses you may have had, etc.

DeLisle answered: "I cannot begin to name all of them, I suppose everyone in Portageville at one time or another." The defendant argues that because DeLisle did not in his answer specifically name a volunteer fireman, the trial court committed reversible error in permitting that fireman to testify. The interrogatory was overly broad. The answer seems responsive. The defendant did not seek a more specific answer. Under the circumstances, it cannot be said the trial court abused its discretion in permitting the fireman to testify. *Dane By Dane v. Cozean,* 636 S.W.2d 87 (Mo. App.1982); *Bethell v. Porter,* 595 S.W.2d 369 (Mo.App.1980).

■ By an affidavit attached to its brief, the defendant seeks to establish the trial court did not consider a deposition that had been admitted in evidence. The affidavit recites a statement made after the entry of the judgment by a deputy circuit clerk to one of the defendant's attorneys. In response to a question, the deputy said she had no authority to open a sealed deposition. For many reasons, the affidavit does not establish the deposition was not considered. The detailed findings of fact concerning the subject matter of the deposition belie that contention. Moreover, such an ex parte affidavit is not a part of the record before the trial court or before this court. *Botkin v. Cain,* 587 S.W.2d 100 (Mo.App.1979). The point merits no further consideration. *Hendershot v. Minich,* 297 S.W.2d 403 (Mo.1956).

By its tenth and last point, the defendant contends the trial court erred in awarding the plaintiffs interest from 60 days after the proof of loss was filed. The policy provides:

The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.

The policy also provides for an award of damages by an appraisal procedure upon demand of either party.

Section 408.020 in part provides: "Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, ...." This statute has been consistently applied to insurance contracts. *St. Joseph Light & Power Co. v. Zurich Ins. Co.,* 698 F.2d 1351 (8th Cir. 1983). Also see *St. Louis Cty. Nat. Bank v. Maryland Cas. Co.,* 564 S.W.2d 920 (Mo. App.1978); *Schultz v. Queen Insurance Company,* 399 S.W.2d 230 (Mo.App.1965).

Under such policy provisions, it has been further held "[t]he written demand or request, however, has been held to be a condition precedent to an award upon appraisal." *Hawkinson Tread Tire S. v. Indiana Lumbermens M.I. Co.*, 362 Mo. 823, 245 S.W.2d 24, 28 (1951). Also see *Reading Ins. Co. v. Egelhoff*, 115 F. 393 (W.D.Mo.1902) and *Yankoff v. Allied Mutual Insurance Company*, 289 S.W.2d 471 (Mo.App.1956). As stated, the plaintiffs vigorously denied the defendant established it was a farmers mutual insurance company organized under §§ 380.479 to 380.860. It argues it did not in writing waive an appraisal. Even if the non-waiver provisions of § 380.830 are applicable, the recognized construction of the pertinent policy provision is not contrary to that section. The award of interest was valid and the point is denied. *St. Louis Cty. Nat. Bank v. Maryland Cas. Co.*, supra. Also see Annot., Fire Loss—Right to Prejudgment Interest, 5 A.L.R.4th 126 (1981). The judgment is affirmed.

GREENE, C.J., CROW, P.J., and HOGAN and PREWITT, JJ., concur.